(No. 36185)

THE PEOPLE EX REL. A. C. HILLISON, County Collector, Appellant, *vs.* CHICAGO, BURLINGTON AND QUINCY RAILROAD COMPANY, Appellee.

*Opinion filed March 29, 1961.—Rehearing denied May 17, 1961.*

JAMES E. BALES, State's Attorney, of Dixon, (WILLARD ICE, Special Assistant Attorney General, and JOHN E. BABB, Special Assistant State's Attorney, of counsel,) for appellant.

C. W. KROHL, R. T. CUBBAGE, J. I. SHIELDS, and JOHN H. BISHOP, all of Chicago, and DIXON, DEVINE & RAY, of Dixon, (ELDON MARTIN, of counsel,) for appellee.

Mr. JUSTICE HERSHEY delivered the opinion of the court:

This is an appeal from an order sustaining defendant's objections to property taxes and ordering a refund of 45% of the taxes paid for the year 1958. The basis of the objections was that defendant's property was assessed by the Department of Revenue at 100% of full, fair cash value, while locally assessed property, after giving effect to the

multiplier certified by the Department of Revenue, was assessed at no more than 55% of full value, that this action on the part of the Department of Revenue was deliberate and intentional and constituted constructive fraud, and that the tax objection procedure is an appropriate remedy whereby defendant can obtain relief.

Two questions are involved in this appeal, one procedural and the other substantive. We will dispose of the procedural question first, since it goes to the jurisdiction of the county court to entertain the objections raised by defendant.

It is plaintiff's contention that defendant's objection is essentially an attempt to review the Department's determination of the multiplier applicable to Lee County for 1958, and that the exclusive remedy by which this may be done is by the administrative procedure prescribed in section 148a of the Revenue Act of 1939, (Ill. Rev. Stat. 1957, chap. 120, par. 629a,) with judicial review under the Administrative Review Act. In support of this position, plaintiff relies on section 148a of the Revenue Act, which affords the right to petition the department for a reconsideration of its tentative estimate of the full, fair cash value of locally assessed property in the county, section 138 of the Revenue Act, (Ill. Rev. Stat. 1957, chap. 120, par. 619,) which makes final administrative decisions of the Department under the act judicially reviewable under the Administrative Review Act, and section 2 of the Administrative Review Act, (Ill. Rev. Stat. 1957, chap. 110, par. 265,) which makes that act the exclusive method of review in all cases to which it applies. In answer to this contention, defendant points to our opinions in *Chicago, Burlington & Quincy Railroad Co. v. Department of Revenue,* 17 Ill.2d 376, and *People ex rel. Callahan v. Gulf, Mobile and Ohio Railroad Co.* 8 Ill.2d 66, in which we indicated that questions of the character here involved may be raised by objection to the county collector's application for judgment. Plaintiff asserts that such state-

ments in these two cases are mere *dicta,* which we should disavow in the light of express statutory provisions compelling a contrary conclusion.

The Administrative Review Act was enacted in 1945 by the same General Assembly that enacted the full assessment program. The act is not self-executing, but applies only to those cases where it is adopted, by express reference, by the act creating or conferring jurisdiction upon the administrative agency involved. It was not made applicable to the Revenue Act of 1939 until the 1947 session of the General Assembly, when section 138 of the Revenue Act was amended to make final administrative decisions of the Department reviewable under the Administrative Review Act. An examination of section 138 suggests that the final administrative decisions referred to are those of the Department in its assessment of property, and that the section has, or at least in 1947 had, nothing to do with the equalization functions of the Department.

Section 138 of the Revenue Act, together with sections 137 and 139, forms a group of three sections dealing with the review of original assessments made by the Department of Revenue. Section 137 provides for the publication of a list of original assessments made by the Department, and gives any person aggrieved by any such assessment the right to petition the Department for a review of the assessment complained of. Section 138, prior to its amendment in 1947, provided for judicial review by way of appeal to the circuit court of any determination of the Department under the preceding section. (Ill. Rev. Stat. 1945, chap. 120, par. 619.) As amended in 1947, and as it still remains today, the first sentence of section 138 reads: "The Circuit or Superior Court of the county *in which the property is assessed,* or some part of such property, *is situated* shall have the power to review all final administrative decisions of the Department in administering the provisions of this Act." (Emphasis supplied.) (Ill. Rev. Stat. 1947,

chap. 120, par. 619.) Despite the use of the blanket phrase "all final administrative decisions of the Department," the phrasing of jurisdiction in terms of the county in which the assessed property is situated makes it clear that the legislature was thinking primarily, if not exclusively, of administrative decisions relating to the assessment of property by the Department. In any event, it could hardly have been the intent of the legislature in 1947 to make the Administrative Review Act applicable to determinations of the Department under section 148a of the Revenue Act since that section was not enacted until 1951. There was in 1947 no provision at any stage of the equalization procedure for an administrative hearing by the Department. It is clear, therefore, that while after the 1947 amendment to section 138 of the Revenue Act the Administrative Review Act was prescribed as the method of reviewing an original assessment made by the Department, it had nothing to do with the process of equalization and did not afford a method of review of the Department's determination of equalization factors or multipliers. It remains to be considered whether the enactment of section 148a of the Revenue Act of 1939 indicated a legislative intent to provide an exclusive remedy.

Section 148a, as enacted in 1951 and as it remained until amended in 1959, provided that, within 15 days after the county treasurer, assessment supervisor, county assessor or board of assessors, files with the Department an abstract of the assessments of the locally assessed property in the county, as revised by him or it, the Department shall forward to the county clerk its estimate of the full, fair cash value of the locally assessed property in the county. Then, within 30 days after the receipt of such estimate from the Department, the county, or any taxing district or taxpayer therein, claiming to be detrimentally affected thereby, may petition the Department for a reconsideration of such estimate, and "if granted the Department may upon such reconsideration, after giving such hearing to all interested

parties and such opportunity for submitting such proofs and arguments in support of or adverse to such estimate as the Department shall deem requisite in the premises, either confirm or revise such estimate so as to correctly represent the considered judgment of the Department respecting the estimated full, fair cash value of all locally assessed property in such county."

The defendant vigorously argues that the remedy thus provided, considered as a reviewable administrative proceeding, is so deficient as not to constitute an "available" remedy. Obviously legislative changes could substantially improve the procedure. The question for our determination, however, is whether the remedy is exclusive, and we are of the opinion that it is not.

We conclude that the county court had jurisdiction to consider the questions raised by defendant's tax objections. In reaching this conclusion, we have considered the jurisdictional question as though it were one of first impression and have re-examined the applicable statutory provisions without regard to our statements in *Chicago, Burlington & Quincy Railroad Co.* v. *Department of Revenue,* 17 Ill.2d 376, and *People ex rel. Callahan* v. *Gulf, Mobile and Ohio Railroad Co.* 8 Ill.2d 66, to the effect that the tax-objection procedure is an available and proper remedy. However, even if plaintiff's argument had caused us to doubt the soundness of our statements in these previous cases, we would, under the circumstances, be reluctant to disavow these statements, and we entertain grave doubt that the question should be treated altogether as one of first impression. *People ex rel. Callahan* v. *Gulf, Mobile and Ohio Railroad Co.* 8 Ill.2d 66, was a tax-objection case, in which the essence of the objections was substantially the same as here, namely, that there was a fraudulent discrimination resulting from the undervaluation of locally assessed property. A question was raised as to whether the railroad had pursued the proper remedy. This question was

considered by this court, and we concluded that a proper remedy had been pursued. We affirmed the trial court's order striking the objections, on the ground that the railroad had pleaded conclusions rather than facts. However, the opinion squarely indicated that the procedure was a proper one and that the judgment of the trial court was affirmed only because of a technical defect in pleading. While the opinion does not indicate whether or not any claim was made that the Administrative Review Act was the exclusive remedy, it does clearly appear that the question of whether the tax-objection procedure was a proper remedy was raised, was considered by this court, and was decided in the affirmative. Thus the conclusion that the tax-objection procedure is a proper remedy was more than mere *dictum.*

If plaintiff's claim that the Administrative Review Act affords the sole and exclusive remedy is correct, it would have become so either in 1947 with the amendment to section 138, or in 1951 with the enactment of section 148a of the Revenue Act. Yet not until now has any such claim been made. Our opinion in *People ex rel. Callahan* v. *Gulf, Mobile and Ohio Railroad Co.* 8 Ill.2d 66, was filed in 1956. Two full regular sessions of the General Assembly, and a portion of a third have been held since then. If our opinion in that case overlooked or misconceived the legislative intent, no attempt has since been made by the legislature to set us right. Nor, until this case, has any question been raised by the Department of Revenue. This continued legislative and administrative acquiesence in our conclusion in *People ex rel. Callahan* v. *Gulf, Mobile and Ohio Railroad Co.* suggests that our conclusion might not have been so glaringly wrong as plaintiff now seems to think. Moreover, the uncertainty in plaintiff's argument as to whether or not the tax-objection procedure became unavailable as a result of the 1947 or the 1951 legislation, suggests the possibility that so inadequately expressed an intention as

that attributed by plaintiff to the legislature may have been nonexistent.

We conclude, therefore, that the county court had jurisdiction and properly overruled plaintiff's motion to strike the objection.

Before dealing with the main substantive question, it is necessary to dispose of one further argument of plaintiff. Plaintiff, relying on certain language in *People ex rel. Prindable* v. *Union Electric Power Co.* 392 Ill. 271, argues that the constitution does not require railroad property to be assessed and taxed uniformly with other property, but that railroad property is a separate class, and that all that the constitution requires is uniformity within the class. Whether the legislature might constitutionally have provided for the assessment of railroad property at its full value while other property is assessed at only 55% of full value is not before us. The legislature has not so provided. The statute requires all property to be assessed at its full value, and the trial court found that the Department has failed to comply with the statute. It remains to be considered whether the findings of the trial court are supported by the evidence.

Defendant offered voluminous testimony and exhibits relating to the assessment level of locally assessed property, after equalization. This consisted chiefly of studies of the assesment level of Illinois property made by the Department of Revenue each year in accordance with the Revenue Act of 1939, as amended. (Ill. Rev. Stat. 1957, chap. 120, par. 627.) Under this mandate, the Department annually determines the percentage relationship for each county of the State between the valuations at which locally assessed property, which includes all real estate except that owned by a railroad, is listed by assessors, and the estimated full, fair cash value of such property. This was done through a comparison of the assessed values and full, fair cash values of property shown to be the subject of *bona fide* sales,

established through an analysis of property transfers and other means. In addition, the United States Census Bureau study of the proportion of Illinois assessed values, as equalized, to full, fair cash values, ascertained through sales prices during the first six months of 1956, was introduced, and other comparisons of assessed values to appraised values, as of April 1, 1958, were submitted. Each of these studies found that locally assessed property was equalized by the county multipliers of the Department of Revenue at less than 55% of full, fair cash value. The Department's studies established a State-wide average ratio for locally assessed property for 1957 and eleven prior years. Because it was shown that total assessed values increased only slightly in 1958 over 1957, no substantial change in the 1958 assessment level could have occurred. Sales ratio studies and appraisal ratio studies of the assessment level in Lee County in 1958 were also introduced.

Studies of the type introduced in this case to determine the general assessment level of Illinois property, carried out by the Department of Revenue pursuant to statute (Ill. Rev. Stat. 1957, chap. 120, par. 627), have been recognized by this court. *People ex rel. Ruchty* v. *Saad,* 411 Ill. 390.

Plaintiff offered no evidence to contradict any of these studies or the other evidence presented by defendant showing the assessment level. The trial court made a finding of fact that locally assessed property, both in Lee County and in the State generally, was assessed at less than 55% of full, fair cash value in 1958. With uncontradicted evidence supporting this finding, it will not be disturbed on appeal. *People ex rel. Penrod* v. *Chicago and North Western Railway Co.* 17 Ill.2d 307; *Brown* v. *Zimmerman,* 18 Ill.2d 94.

Plaintiff, citing *Mobile and Ohio Railroad Company* v. *State Tax Commission,* 374 Ill. 75, contends that the proper comparison of the assessment of defendant's property is with

the State-wide average of locally-made assessments rather than with the county average of such assessments in any particular county and argues that the State-wide average of locally assessed property has not been proved to be substantially less than full value. The trial court found not only that the ratio of equalized assessed value to full fair cash value of locally assessed property in Lee County did not exceed 55% for the year 1958, but also that such ratio in the State as a whole did not exceed 55%. While the evidence with respect to the county average was naturally much more voluminous than that with respect to the State-wide average, we believe that there was sufficient evidence to sustain both findings of the trial court, especially in view of the presumption that the Department of Revenue has not failed to perform its statutory duty of equalizing the assessment level of all counties at full fair cash value. Thus, for the purposes of this particular appeal, it is unnecessary to decide the question, since the result is the same regardless of whether the comparison is made with the county average or the State-wide average. However, in the case of *People ex rel. Kohorst* v. *Gulf, Mobile and Ohio Railroad Company*, decided this day (*post,* p. 104,) we concluded that the proper comparison is with the county average.

Plaintiff contends that, if the trial court found, as it did, that locally assessed property was equalized at no more than 55% of full value, it should also have found that defendant's property was assessed at no more than 73% of its full value, and that, at most, defendant is entitled to a refund of $^{18}\!/_{73}$, rather than 45%, of its taxes. In making this contention, plaintiff claims that the county court's finding that locally assessed property was equalized at no more than 55% of full value was derived solely from an arithmetical computation based on ratio studies and excluded the element of the Department's judgment. On the other hand, plaintiff argues, in finding that defendant's property was assessed at its full value, the court, in effect,

recognized the Department's judgment factor. No fair comparison can be made, says plaintiff, by including the effect of the judgment factor on one side of the scale, while excluding it on the other.

The record shows that the Department, in assessing defendant's railroad property, initially computed the average of three factors which this court has upheld as properly bearing on the valuation of railroad property. (*Chicago and North Western Railway Co.* v. *Department of Revenue,* 6 Ill.2d 278. These three factors are (1) capitalized value of earnings, (2) market value of stock and debt, and (3) reproduction cost, less depreciation, of the operating property located in Illinois. The average of these factors resulted in an initial figure of $205,153,000. Thereafter, in the exercise of its "judgment factor," the Department arrived at an assesment of $147,000,000 for defendant's railroad property for 1958. Plaintiff argues, in effect, that if the ratio studies of the Department are to be accepted as indicating that locally assessed property was equalized at no more than 55% of full value, then the average figure of $205,153,000 should be accepted as the actual value of defendant's property, so that the final assessment of defendant's property at $147,000,000 represented only about 73% of its full value.

This argument has considerable surface appeal, but we cannot agree with it as applied to the particular situation. In considering both the assessment of railroad property and the equalization of other property, there is an initial presumption that the Department complied with its statutory duty. Therefore, in the absence of evidence to the contrary, it will be presumed both that defendant's property was assessed at full value and that locally assessed property was equalized at full value. In the case of the locally assessed property, the evidence presented by the defendant, including the ratio studies of the Department, was deemed sufficient by the trial court to overcome the *prima*

*facie* presumption. No evidence was introduced by plaintiff. The trial court therefore found that locally assessed property was equalized by the Department at not more than 55% of full value. We believe the trial court was warranted in so finding. The record indicates that in preparing its ratio studies the Department endeavors to take a representative sampling of voluntary, arms-length sales of property, and from this data arrives at the ratio between the assessed valuation and full value as indicated by such sales. Since the law provides for the valuing of property "at its fair cash value, estimated at the price it would bring at a fair, voluntary sale" (Ill. Rev. Stat. 1957, chap. 120, par. 501), it would appear that the samplings of voluntary sales taken by the Department afford persuasive evidence of the level of actual property values as value is defined in the statute. Certainly, in the absence of anything to the contrary, studies based upon such sales should at least approximate the level of actual values. And when, as here, it is shown that the taxable property in the county was assessed at a level far below what these studies indicate to be the level of actual value, then the initial *prima facie* presumption that property was equalized at full value has been overcome, and it then became incumbent upon plaintiff to produce evidence to explain the wide discrepancy between the actual equalization level and what the ratio studies indicate that level should have been. To say this is not to reduce the Department to the level of a calculating machine or to preclude the legitimate use of a judgment factor, nor is it to imply that such ratio studies are conclusive. What we do say is that where, as here, there is a wide and unexplained variation between the level at which property is equalized and what the undisputed evidence, based upon actual voluntary sales indicates is the level of full value, then the initial presumption that the Department equalized locally assessed property at 100% of its full value has been overcome, and plaintiff then has the burden of introducing

evidence to explain or justify such variation. There may have been factors which would justify the Department in its action. If there were, it should have been able to articulate them with a sufficient degree of intelligibility to enable a court to determine whether such action by the Department had a reasonable basis or was completely arbitrary. This the plaintiff has made no attempt to do. Under the circumstances the trial court was warranted in finding that the locally assessed property was equalized at no more than 55% of its full value.

The valuation of railroad property poses a different problem. Here the concept of market value has little practical application. Since railroads are not bought and sold on the market, the legislature has provided that their fair cash value shall be determined by the Department of Revenue (Ill. Rev. Stat. 1957, chap. 120, par. 561), and reasonable discretion must be given to the Department in performing this task. The complex questions involved in assessing railroads have been the subject of recent litigation in this court. (*Chicago and North Western Railway Co.* v. *Department of Revenue,* 6 Ill.2d 278; *Chicago, Burlington & Quincy Railroad Co.* v. *Department of Revenue,* 17 Ill.2d 376.) We have approved the use by the Department of a consideration among other things of the three factors of (1) capitalized value of earnings, (2) market value of stock and debt, and (3) reproduction cost, less depreciation. The fact that these have been recognized as factors which may properly be considered by the Department in assessing railroad property, however, does not mean that the average of these three factors or any other formula making use of them will necessarily equal or will be presumed to be the same as their actual value. Since there is no presumption that the average of these factors, or $205,153,000, was the actual value of defendant's property, the fact that the Department finally assessed defendant's property at a lesser figure does not indicate that the

property was assessed at less than its full value and does not overcome the presumption that the Department properly assessed defendant's property at its full value. There being no evidence in the record to overcome the presumption that the Department complied with the law in assessing railroad property, even though it departed from the law in equalizing other property, the trial court was warranted in finding that defendant's property was assessed at 100% of its full value.

The judgment of the trial court ordered a refund of 45% of the taxes paid by defendant under protest. This is the same in practical effect as if the assessment of defendant's railroad property had been reduced to 55% of its full value. Thus, the effect of the judgment is to do what we held could not properly be done in *Chicago, Burlington & Quincy Railroad Co.* v. *Department of Revenue,* 17 Ill.2d 376, where we said that the practice of debasing or equalizing assessed valuations of railroad property below full value in order to achieve uniformity with local assessments is no longer permissible under the Revenue Act. The theory of defendant's tax objections is constructive fraud. Logically, therefore, the measure of recovery should be the amount by which it was "constructively defrauded" by the failure of the assessing and equalizing authorities to comply with the statutory mandate of assessing and equalizing locally assessed property at its full cash value. This would be the difference between defendant's 1958 taxes and the amount its taxes would have been had locally assessed property been equalized at a level representing 100% of full cash value. Such a measure of recovery is not only more consistent with the theory of constructive fraud, but also involves a less obvious departure from the statutory requirement of full value assessment.

While the trial court found that the tax payments by objector would have been at least 45% less than those paid if the discrimination had not taken place, this finding was

evidently based upon the assumption that the way to cure the discrimination is to treat defendant as if its property had been assessed on the same basis as locally assessed property, or at 55% of its full value. However, the departure from the law on the part of the Department of Revenue was not in assessing defendant's property at its full value but in failing to equalize locally assessed property at its full value. Therefore, the measure by which defendant has been damaged by the Department's failure to comply with the statute is the difference between its taxes for 1958 and the amount its taxes would have been had locally assessed property been equalized at full value. We are not unmindful of the fact that the application of this measure of recovery may entail practical difficulties that could be avoided by affirming the judgment ordering a flat 45% refund. In our opinion, however, such a measure of recovery is more consonant with both logic and justice. The method of applying this measure is set forth in greater detail in our opinion in *People ex rel. Kohorst* v. *Gulf, Mobile and Ohio Railroad Company, post,* p. 104. In any event, the amount of recovery is, of course, limited by the amount of the protest.

The judgment of the county court of Lee County is affirmed except insofar as the amount of the refund is concerned. With respect to the amount of taxes ordered refunded to defendant, the judgment is reversed and the cause remanded to the county court of Lee County, with directions to determine the amount of the refund to which defendant is entitled in accordance with the measure of recovery referred to.

*Affirmed in part and reversed in part*
*and remanded, with directions.*