CHRISTIAN ACTION MINISTRY, Plaintiff-Appellee, *v.* THE DEPARTMENT OF LOCAL GOVERNMENT AFFAIRS, Defendant-Appellant.

First District (3rd Division)   No. 76-1399

Opinion filed December 28, 1977.

William J. Scott, Attorney General, of Chicago (Paul V. Esposito, Assistant Attorney General, of counsel), for appellant.

Gottlieb and Schwartz, of Chicago, for appellee.

Mr. JUSTICE McNAMARA delivered the opinion of the court:

The defendant, the Department of Local Government Affairs of the State of Illinois, appeals from an order of the circuit court of Cook County overturning the Department's determination that property purchased by the plaintiff, Christian Action Ministry (hereinafter "CAM"), was not entitled to tax-exempt status as property of a charitable institution. The trial court found that the property was used for charitable purposes, that CAM was the equitable owner of the property, and that, therefore, the property was entitled to tax-exempt status.

CAM is an Illinois nonprofit corporation organized by 13 churches on Chicago's west side. It engages in charitable activities in that area. Since 1967 CAM has been exempt from the payment of Federal income tax and

has qualified as a tax-exempt organization pursuant to a determination letter issued by the United States Treasury Department.

In January 1973, in order to expand its charitable and educational activities, CAM purchased the subject property at 4900 Flournoy Street in Chicago under a contract for deed. CAM made a down payment of $30,000 and has paid $2,500 the first of each month since March 1, 1973. Since February 1973, CAM has occupied and used these premises exclusively for charitable and educational purposes. By the terms of its contract for deed, CAM is responsible for all real estate taxes levied on the premises. The contract also provides that no right, title or interest, legal or equitable, in the subject property shall pass to CAM until the deed is delivered by the sellers or until the full purchase price is paid.

In November 1975 CAM filed timely exemption complaints with the Board of Tax Appeals of Cook County seeking an exemption from real estate taxes for 1975. The complaint was based on section 19.7 of the Revenue Act of 1939 (Ill. Rev. Stat. 1975, ch. 120, par. 500.7), which provides in pertinent part:

> "All property of institutions of public charity, all property of beneficent and charitable organizations, whether incorporated in this or any other state of the United States, and all property of old people's homes, when such property is actually and exclusively used for such charitable or beneficent purposes, and not leased or otherwise used with a view to profit."

The application was approved by the Board of Appeals. However, the Department reversed this determination citing CAM's failure to demonstrate its ownership of the property.

CAM then filed its complaint for administrative review. In a motion to dismiss, the Department argued that its decision was not subject to review under the Administrative Review Act. The trial court denied the Department's motion to strike and dismiss the complaint and subsequently overturned the Department's denial of CAM's application for tax-exempt status.

The Department first contends that the trial court was without jurisdiction to review its denial of tax-exempt status for CAM. It urges that section 138 of the Revenue Act (Ill. Rev. Stat. 1975, ch. 120, par. 619), providing for review by the circuit court of all final decisions of the Department, is applicable only in cases involving original assessments. Since this case involves denial of tax-exempt status and not an original assessment, the Department argues that direct review by the circuit court was unavailable to CAM.

In support of its position, the Department relies upon *People ex rel. Hillison v. Chicago, Burlington & Quincy R.R. Co.* (1961), 22 Ill. 2d 88,

174 N.E.2d 175, and *American College of Surgeons v. Korzen* (1967), 36 Ill. 2d 340, 224 N.E.2d 7. In *Hillison* the defendant-taxpayer filed an objection ιο the collection of the tax instead of seeking direct review. Plaintiff maintained that defendant's exclusive method of review was through the Administrative Review Act. Thus the issue there was not whether direct review under the Act was proper, but whether the tax-objection procedure pursued by defendant was available as a remedy. The court held that direct review under the Act was not defendant's exclusive remedy. From this holding, the Department here urges upon us the conclusion that not only is the tax-objection procedure proper, but also that direct review is not available at all in cases such as the present one. We find no such implication in the *Hillison* holding.

■■ Similarly, in *American College of Surgeons*, the assessor maintained that plaintiff's exclusive remedy was direct review under the Administrative Review Act and that a suit to enjoin the collection of the tax was improper. Holding that the course pursued by plaintiff was proper, the court stated at pages 342-343, "We are of the opinion that the Administrative Review Act is not here applicable, since it is not an original assessment by the Department." The Department maintains that the clear import of the statement is that direct review under the Act is available only in cases involving original assessments. However, an equally plausible reading of that statement is that the exclusivity provision of the Act applies only to original assessments and that in all other cases collateral remedies, as well as direct review, may be available to a plaintiff seeking to challenge the imposition of a tax. In any event, neither of the cases cited by the Department dealt with the issue of whether direct review is available to a plaintiff challenging the denial of a tax exemption. We find that the clear language of section 138 of the Revenue Act providing for review of "all final administrative decisions of the Department in administering this Act", is authority for the trial court's exercise of jurisdiction.

The Department next contends that the trial court erred in holding that CAM was entitled to a 1975 tax exemption on the subject property. The Department argues that in addition to the property's exclusive use for charitable purposes, ownership of the property by the charity is necessary before a tax-exemption may be granted. The Department cites several cases in support of this general proposition. (*Hoffman v. Lehnhausen* (1971), 48 Ill. 2d 323, 269 N.E.2d 465; *Coyne Electrical School v. Paschen* (1957), 12 Ill. 2d 387, 146 N.E.2d 73; *Rogers Park Post No. 108 v. Brenza* (1956), 8 Ill. 2d 286, 134 N.E.2d 292.) However, in these cases, the reference to the requirement of ownership by a charitable organization focused on the nature of the organization in question, and it was found that none of them qualified as "charitable" organizations. The cases lend

no support to the Department's contention that nothing short of legal title will satisfy the requirement of ownership.

■■ The Department places great reliance on *People ex rel. McCullough v. Logan Square Presbyterian Church* (1911), 249 Ill. 9, 94 N.E. 155. However, that case was decided under a 1908 tax statute, since repealed, which exempted "church property * * * owned by the congregation." In contrast, the present statute exempts "[a]ll property of institutions of public charity, all property of beneficent and charitable organizations * * * when such property is actually and exclusively used for such charitable or beneficent purposes * * *." (Ill. Rev. Stat. 1975, ch. 120, par. 500.7.) There is no explicit statutory requirement of title ownership. Moreover, we do not believe that policy considerations mandate that such a requirement be inferred. CAM paid $30,000 down on the property and has been making substantial monthly payments since March 1, 1973. CAM is also liable for the payment of any and all real estate taxes levied against the property. These facts give it a sufficient interest in the property to warrant granting it a tax exemption. We do not believe the contract provision relating to the retention of legal and equitable title by the sellers is determinative of CAM's ability to qualify for a tax exemption. Regardless of the status of title, CAM has a substantial monetary interest in the property and is liable for the payment of real estate taxes. We cannot perceive any difference in kind between the conventional purchase money mortgage arrangement, which the Department concedes would qualify CAM for tax-exempt status, and the contract for warranty deed used here, which would justify disparate treatment for tax purposes. The United States Supreme Court has recognized that there is little to differentiate the contract for deed device from the more conventional forms of financing. (*S.R.A., Inc. v. Minnesota* (1946), 327 U.S. 558, 90 L. Ed. 851, 66 S. Ct. 749.) We conclude that the trial court correctly held that CAM was entitled to tax-exempt status.

For the reasons stated, the judgment of the circuit court of Cook County is affirmed.

Judgment affirmed.

JIGANTI and McGILLICUDDY, JJ., concur.