(No. 50344.⬛)

CHRISTIAN ACTION MINISTRY, Appellee, v. DEPART-
MENT OF LOCAL GOVERNMENT AFFAIRS,
Appellant.

*Opinion filed December 4, 1978.*

52

William J. Scott, Attorney General, of Springfield (Paul J. Bargiel, Patricia Rosen, and Paul V. Esposito, Assistant Attorneys General, of Chicago, of counsel), for appellant.

Gottlieb and Schwartz, of Chicago (Ellis Shaffer and David Sugar, of counsel), for appellee.

MR. JUSTICE CLARK delivered the opinion of the court:

Christian Action Ministry (hereafter Ministry), the plaintiff, filed in the circuit court of Cook County a

complaint for administrative review of a decision by the defendant, the Department of Local Government Affairs (hereafter Department), denying tax-exempt status to certain real estate held and used by the Ministry. The circuit court, finding that the property was used for charitable purposes (Ill. Rev. Stat. 1975, ch. 120, par. 500.7) and that the Ministry was the equitable owner, held the property was tax exempt. The appellate court affirmed (56 Ill. App. 3d 102), and we granted leave to appeal (58 Ill. 2d R. 315).

The facts are not disputed. The Ministry, an Illinois not-for-profit corporation organized by several churches and performing charitable works, entered into a contract for warranty deed for the purchase of property located on Chicago's west side on January 31, 1973. The Ministry paid $30,000 down and makes monthly payments of $2,500, occupies and uses the property exclusively for charitable purposes, and has Federal tax-exempt status. The contract provides that no title, legal or equitable, will pass to the Ministry until the deed is delivered or until the full purchase price is paid, and that the Ministry is responsible for real estate taxes. In December 1975, the Cook County board of appeals determined that the Ministry's property was exempt (under Ill. Rev. Stat. 1975, ch. 120, par. 500.7) from taxation. The Department, as provided by section 119 of the Revenue Act of 1939 (Ill. Rev. Stat. 1975, ch. 120, par. 600), disapproved the board's action in February 1976 and reaffirmed that disapproval two months later because the Ministry was not the title owner. Shortly after, the Ministry filed its complaint. The Department moved to strike the complaint and dismiss the cause on grounds that the Department's denial of tax-exempt status was not subject to review under the Administrative Review Act (Ill. Rev. Stat. 1975, ch. 110, pars. 264 *et seq.*). The Ministry responded that section 138 of the Revenue Act of 1939 (Ill. Rev. Stat.

1975, ch. 120, par. 619) authorizes jurisdiction to review the Department's disapproval. The circuit court agreed with the Ministry, denied the motion, and overturned the disapproval.

Two issues are raised. First, whether the circuit court properly exercised jurisdiction under the Administrative Review Act. Second, whether the Ministry owned the property, which, it is undisputed, is used for charitable purposes, thus entitling it to tax-exempt status under section 19.7 of the Revenue Act of 1939 (Ill. Rev. Stat. 1975, ch. 120, par. 500.7).

The Department contends that the circuit court lacked jurisdiction under the Administrative Review Act (Ill. Rev. Stat. 1975, ch. 110, par. 264 *et seq.*) to review the Department's denial of tax exemption because section 138 of the Revenue Act of 1939 (Ill. Rev. Stat. 1975, ch. 120, par. 619) provides for judicial review pursuant to the Administrative Review Act only in cases involving "original assessments"; and that since this case did not involve an assessment, direct review by the circuit court was improper. The Ministry, on the other hand, contends that section 138 of the Revenue Act allows for direct review by the circuit court, pursuant to the Administrative Review Act, because section 138 does not distinguish exemption from assessment and does not specify "original assessment." Rather, that section refers to "all final administrative decisions of the Department" as subject to review.

Section 9 of article VI of the 1970 Illinois Constitution provides: "Circuit Courts shall have such power to review administrative action as provided by law." Section 138 of the Revenue Act provides:

"The circuit court for the county in which the property assessed, or some part of such property, is situated shall have the power to review all final administrative decisions of the Department in administering the provisions of this Act. The provisions of the 'Administra-

tive Review Act,' approved May 8, 1945, and all amendments and modifications thereof, and the rules adopted pursuant thereto, shall apply to and govern all proceedings for the judicial review of final administrative decisions of the Department hereunder. The term 'administrative decision' is defined as in Section 1 of the 'Administrative Review Act.' " Ill. Rev. Stat. 1975, ch. 120, par. 619.

The first sentence of section 138 lacks ambiguity. "The circuit court for the county in which the property assessed, or some part of such property, is situated shall have the power to review *all final administrative decisions of the Department in administering the provisions of this Act.*" (Emphasis added.) (Ill. Rev. Stat. 1975, ch. 120, par. 619.) Although section 138 is placed between two sections dealing with "original assessments," the language of section 138 is clear. The Act referred to is unquestionably the Revenue Act of 1939 (Ill. Rev. Stat. 1975, ch. 120, par. 482 *et seq.*), and the Department is the defendant here (Ill. Rev. Stat. 1975, ch. 120, par. 482). The phrase "all final administrative decisions" is neither limited nor qualified. Indeed, section 138 expressly adopts as the definition for "administrative decision" the definition set out in section 1 of the Administrative Review Act (Ill. Rev. Stat. 1975, ch. 110, par. 264):

" 'Administrative decision' or 'decision' means any decision, order or determination of any administrative agency rendered in a particular case, which affects the legal rights, duties or privileges of parties and which terminates the proceedings before the administrative agency."

There is no question that a legal duty or privilege of the Ministry was affected here: it was denied a charitable tax exemption and was, as a result, responsible for real estate taxes. Moreover, the Department's disapproval terminated all proceedings before it.

We have repeatedly stated, very recently in *People v.*

*Moore* (1978), 69 Ill. 2d 520, 523, that the "language of a statute must be given its plain and ordinary meaning. '*** the intention of the legislature should be ascertained and given effect. [Citations.] This is to be done primarily from a consideration of the legislative language itself, which affords the best means of its exposition, and if the legislative intent can be ascertained therefrom it must prevail and will be given effect without resorting to other aids for construction. [Citations.] There is no rule of construction which authorizes a court to declare that the legislature did not mean what the plain language of the statute imports.' " (*Franzese v. Trinko* (1977), 66 Ill. 2d 136, 139-40. Accord, *Western National Bank v. Village of Kildeer* (1960), 19 Ill. 2d 342, 350.) The Department objects to the broad interpretation the appellate court gave to the phrase "all final administrative decisions of the Department in administering this Act" (56 Ill. App. 3d 102, 104), and it cites two decisions of this court in support of its objection: *American College of Surgeons v. Korzen* (1967), 36 Ill. 2d 340, and *People ex rel. Hillison v. Chicago, Burlington & Quincy R.R. Co.* (1961), 22 Ill. 2d 88. Those cases lend support to the Department's position; and the appellate court's attempt to distinguish them is ineffectual. Given the intent of the legislature and our analysis above, however, we disagree with the Department. Although we do not change the rule in *Hillison,* we find it necessary to modify it (22 Ill. 2d 88, 92-93), and overrule *Korzen* (36 Ill. 2d 340, 342-43), and their progeny, to the extent that language in those cases limited judicial review under the Administrative Review Act to original assessments. As analyzed above, the legislature did not intend limiting section 138 of the Revenue Act of 1939 to original assessments.

In *Hillison* (22 Ill. 2d 88, 90-91) the county collector appealed an order sustaining the taxpayer-railroad's objec-

tion to property taxes. The railroad objected because its property had been assessed by the Department of Revenue at 100% of full cash value while local property, "after giving effect to the multiplier certified by the Department of Revenue, was assessed at no more than 55% of full value," and this constituted constructive fraud. The collector argued that the tax-objection procedure—*i.e.*, a taxpayer's defense or objection to a tax in an application for judgment filed by a collector in circuit court—is not available to a taxpayer; only judicial review under the Administrative Review Act is (Ill. Rev. Stat. 1957, ch. 120, par. 619, ch. 110, par. 264 *et seq.*). This court found the tax-objection procedure proper. Before *Hillison* and since, this court has affirmed the holding that tax objection is "an appropriate means of review" of the "equalization" process where fraud is alleged. (*People ex rel. Boylan v. Illinois Central Gulf R.R. Co.* (1978), 72 Ill. 2d 387; *e.g., People ex rel. Callahan v. Gulf, Mobile & Ohio R.R. Co.* (1956), 8 Ill. 2d 66, 69; *People ex rel. Kohorst v. Gulf, Mobile & Ohio R.R. Co.* (1961), 22 Ill. 2d 104, 108-09; *People ex rel. Cain v. Illinois Central R.R. Co.* (1965), 33 Ill. 2d 232.) The most recent case is *Boylan,* above, which reaffirmed the prior cases: "[T]he Department's equalization function is properly challenged in tax-objection proceedings where constructive fraud is alleged." 72 Ill. 2d 387, 391.

We are not inclined to change that rule now for several reasons. Before the clear language of section 138 of the Revenue Act of 1939 went into effect (1947) and the Administrative Review Act was promulgated (1945), the tax-objection procedure was an available means of reviewing an allegedly fraudulent exercise of the equalization function. (*E.g., People ex rel. Tedrick v. Allied Oil Corp.* (1944), 388 Ill. 219.) Moreover, the equalization function involves only "a mathematical operation which does not involve discretionary judgment factors," and is *not* "sus-

ceptible to meaningful judicial review as envisioned in the Administrative Review Act" (*People ex rel. Boylan v. Illinois Central Gulf R.R. Co.* (1978), 72 Ill. 2d 387, 391), as would be final administrative decisions regarding original assessments or exemptions. Also, precedent has "established the inapplicability of the Administrative Review Act to the Department's equalization function." (72 Ill. 2d 387, 391.) This precedent has been repeatedly approved by this court and acquiesced in by the legislature since the latter has never seen fit to "set us right." (72 Ill. 2d 387, 392.) We note, too, that this procedure is, in effect, a defense of fraud to the filing of an application for judgment rather than an outright attempt to initiate judicial review such as envisioned by the Administrative Review Act or as encompassed in an equity suit.

In *Korzen,* the taxpayer, a not-for-profit organization, sued to enjoin the collection of taxes on property which the Cook County assessor and board of appeals had approved as charitably exempt but the Department of Revenue had not. This court, on the basis of *Hillison,* determined that the taxpayer's equity suit was proper and that the Administrative Review Act, which the collector argued was the taxpayer's only recourse under section 138 of the Revenue Act of 1939, was appropriate only for decisions relating to original assessments of property. *Korzen* must be overruled because the legislature intended the Administrative Review Act to encompass all final decisions of the Department of Local Government Affairs (Ill. Rev. Stat. 1975, ch. 120, par. 619), including, we believe, exemptions. Questions about the propriety of an exemption or denial of exemption clearly lend themselves to meaningful judicial review. (See our analysis of the second issue below.)

Moreover, the reasoning of *Illinois Bell Telephone Co. v. Allphin* (1975), 60 Ill. 2d 350, which eliminated the *Owens* doctrine, suggests that judicial scrutiny by way of

▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬

equity is improper where administrative review is available. *Owens-Illinois Glass Co. v. McKibbin* (1943), 385 Ill. 245, 259, which antedates the Administrative Review Act, permitted equitable relief even after and where the Act was applicable. *Owens* determined:

> "From the foregoing resume the enjoining of the collection of illegal taxes constitutes an exception to the general rule that equity will not take jurisdiction of a cause when there is an adequate remedy at law. It is established that *where a tax is unauthorized by law, or where it is levied upon property exempt from taxation, equity will take jurisdiction and enjoin the collection of the tax.* This constitutes an independent ground of equitable relief, and in such cases it is not necessary that special circumstances exist to authorize issuing an injunction." (Emphasis added.) (385 Ill. 245, 256.)

This court in *Illinois Bell,* where the taxpayer in an equity suit claimed an exemption under the Messages Tax Act (Ill. Rev. Stat. 1971, ch. 120, par. 467.1 *et seq.*), reasoned that permitting "unlimited freedom to seek judicial review of the merits" where the legislature has established an express procedure for judicial review "would severely undermine the legislative purpose manifest in its enactment." (60 Ill. 2d 350, 357; see *Calderwood Corp. v. Mahin* (1974), 57 Ill. 2d 216.) This court concluded that the anomaly of allowing the taxpayer to seek judicial relief in equity "even though his administrative remedy might accomplish the same result *** ought not, in our judgment, to persist." (60 Ill. 2d 350, 359.) We find that reasoning persuasive here and conclude the Department incorrectly urges us to apply *Korzen.* We hold the circuit court had jurisdiction to exercise administrative review. See J. Hilbert, *Illinois Property Tax Exemptions: A Call for Reform,* 25 DePaul L. Rev. 585, 611 (1976).

We now reach the second issue: whether the Ministry owned the property, which is indisputably used for charitable purposes, and is therefore entitled to tax-exempt status. "All property described in Sections 19.1 through 19.24 to the extent therein limited, is exempt from taxation."(Ill. Rev. Stat. 1975, ch. 120, par. 500.) Section 19.7 provides:

> "*All property of institutions of public charity, all property of beneficent and charitable organizations,* whether incorporated in this or any other state of the United States, and all property of old people's homes, *when such property is actually and exclusively used for such charitable or beneficent purposes,* and not leased or otherwise used with a view to profit \*\*\*." (Emphasis added.) (Ill. Rev. Stat. 1975, ch. 120, par. 500.7.)

(Accord, *Hoffman v. Lehnhausen* (1971), 48 Ill. 2d 323, 326, and *Coyne Electrical School v. Paschen* (1957), 12 Ill. 2d 387, 397: charitable use and ownership by a charitable organization are the requirements for a charitable tax exemption on property.) The appellate court held that the Ministry has "a sufficient interest in the property to warrant granting it a tax exemption. We do not believe the contract provision relating to the retention of legal and equitable title by the sellers is determinative of [the Ministry's] ability to qualify for a tax exemption. Regardless of the status of title, [the Ministry] has a substantial monetary interest in the property and is liable for the payment of real estate taxes. We cannot perceive any difference in kind between the conventional purchase money mortgage arrangement, which the Department concedes would qualify [the Ministry] for tax-exempt status, and the contract for warranty deed used here, which would justify disparate treatment for tax purposes." (56 Ill. App. 3d 102, 105.) We agree; and we disagree with the Department's contention that only legal title will satisfy section 19.7's requirement of ownership. The United States Supreme Court has stated that where

"beneficial interest has passed to a vendee, the retention of legal title does not give a significant difference from the situation of a deed with a lien retained or a mortgage back to secure the purchase money." *S.R.A., Inc. v. Minnesota* (1946), 327 U.S. 558, 569, 90 L. Ed. 851, 860, 66 S. Ct. 749, 756, where legal title was retained by the Federal government but the buyer was purchasing property under a contract for deed; Minnesota successfully argued that the contract buyer was the actual owner and therefore the property was subject to a property tax the Federal government was otherwise exempt from; *cf. People ex rel. Williamson v. City of Toulon* (1921), 300 Ill. 408, 413-14.

Had the Ministry arranged a mortgage loan for the property, it would have qualified for the tax-exempt status. To penalize a charitable institution for failing to acquire customary forms of financing and, hence, for making the alternative arrangement of a contract for sale of property in order to carry on its good works, runs counter to the stated objective and policy consideration of encouraging charitable activity. Although statutes granting tax exemptions on property must be strictly construed in favor of taxation (*e.g., Small v. Pangle* (1975), 60 Ill. 2d 510, 514, and *People ex rel. County Collector v. Hopedale Medical Foundation* (1970), 46 Ill. 2d 450, 462), we believe that equitable ownership of property, used exclusively for charitable purposes, by a charitable organization is readily accommodated by section 19.7 of the Revenue Act of 1939 (Ill. Rev. Stat. 1975, ch. 120, par. 500.7). To deny the Ministry's property this status runs counter to the policy of fostering charitable activity. The facts plainly demonstrate substantial interest in the property justifying a determination of tax-exempt status on the basis of equitable ownership: $30,000 initially paid down on the property; monthly payments since March 1, 1973; contractual responsibility for real estate taxes. Although the Department relies on *People ex rel. McCullough v. Logan*

*Square Presbyterian Church* (1911), 249 Ill. 9, 11 (where this court construed language, " '*** when the said buildings and the land on which said buildings are located *** are owned by the congregation ***,' " to mean legal title, and thus denied a religious exemption), we prefer to rely on *People ex rel. Williamson v. City of Toulon* (1921), 300 Ill. 408, 413-14. In *Williamson,* this court expressed a willingness to accept the proposition that equitable title to property used as a public park warranted a tax exemption but the city failed to show it held equitable title. (See *People ex rel. Wagner v. Freeport Masonic Temple, Inc.* (1931), 347 Ill. 180, 181-82, 187, *overruled on other grounds in People ex rel. Thompson v. Dixon Masonic Building Association* (1932), 348 Ill. 593, 596.) We also call attention to two cases of other jurisdictions which have found that charitiable tax-exempt status on property, used for charitable purposes only and purchased by contract for sale, was permitted "even under the rule of strict construction of tax exemptions" statutes: *Village of Hibbing v. Commissioner of Taxation* (1944), 217 Minn. 528, 534, 14 N.W.2d 923, 926; *Ritchie v. City of Green Bay* (1934), 215 Wis. 433, 437, 254 N.W. 113, 114-15. We are not expanding the area of qualification for tax exemptions. Where the legislature requires legal ownership, that obviously must be respected. Where it does not, actual ownership, legal or equitable, is proper. The facts in this case evidence ownership such as contemplated by the legislature.

For the reasons stated, the judgments of the circuit and appellate courts are affirmed.

*Judgments affirmed.*