FARMERS STATE BANK, Pittsfield, Illinois, Plaintiff-Appellant, v. THOMAS D. NEESE *et al.*, Defendants-Appellees (Walter V. Wade *et al.*, Defendants).

Fourth District   No. 4—95—0509

Argued January 23, 1996.—Opinion filed May 9, 1996.

John H. Germeraad (argued), of Sturm & Germeraad, of Springfield, for appellant.

Elizabeth L. Collins and John Duncan (argued), both of United States Attorney's Office, of Springfield, for appellee Internal Revenue Service.

John M. Myers, of Rabin, Myers & Hanken, P.C., of Springfield, for appellees Thomas D. Neese and Susan C. Neese.

JUSTICE GARMAN delivered the opinion of the court:

This appeal involves the relative priority of the rights of the Internal Revenue Service of the United States (IRS) and Farmers State Bank (bank) to the proceeds from a foreclosure sale of property which a debtor was purchasing under a real estate installment contract. The trial court gave the IRS lien for unpaid tax priority over the bank's interest as assignee of the buyer's rights as security for a loan. We affirm.

# I. BACKGROUND

In July 1989, Thomas and Susan Neese contracted to buy real estate in Pike County, Illinois, from Walter and Wilma Wade on installments, for a total purchase price of $55,000. After an initial payment of $5,000, 13 monthly payments of $375 were to be made, after which the amount increased to $650 per month. The payments thus were planned to extend for over five years.

In November 1989, the Neeses obtained a $210,000 loan from the bank. They assigned the bank their interest in the contract as part of the security for the loan. However, neither the assignment nor the contract was recorded until June 1992, when the bank recorded both with the Pike County recorder of deeds. Murray Martin, first vice-president of the bank, testified the reason the bank finally recorded the assignment was to "perfect[ ] that document." In July 1991, before the assignment was recorded, the IRS filed a notice of tax lien with respect to the Neeses in Pike County. The lien was for a deficiency assessed in March 1991.

The Neeses defaulted on their loan payments to the bank after the IRS filed notice, and in July 1994 the bank initiated proceedings under the Illinois Mortgage Foreclosure Law (Foreclosure Law) (735 ILCS 5/15—1101 *et seq.* (West 1992)). When the suit was filed, 58.6% of the purchase price was still owed.

The Neeses also defaulted on their contract payments to the Wades, and the Wades sent a notice of default to the Neeses and the bank. In November 1994, the bank paid the Wades the remaining amount owed on the contract and took an assignment of all the Wades' rights under the contract. In March 1995, the court entered its judgment of foreclosure. After paying the reasonable expenses involved with the foreclosure, the proceeds of the sale went first to repay the bank the amount it paid the Wades to buy out the contract, second to the IRS to satisfy the tax lien, and third to pay the remaining amount owed to the bank on its loan. The property was foreclosed and sold for $60,000, which was exhausted by payment of $47,881.26 to the bank and $10,448.81 to the IRS (the remaining $1,669.93 went to the buyers at the foreclosure sale as a credit for real estate taxes).

# II. ANALYSIS

The bank complains on appeal first, the Neeses had no interest to which the IRS lien could attach, and second, even if the IRS lien did attach, that as assignee the bank should have had priority over the IRS and, thus, should have received the money which went to the IRS. Our review on both issues is *de novo*, as the dispute concerns solely the application of law to undisputed facts. *Fitzpatrick v. Hu-*

*man Rights Comm'n,* 267 Ill. App. 3d 386, 392, 642 N.E.2d 486, 491 (1994).

## A. The Neeses Had an Interest to Which the IRS Lien Could Attach

██ Under the Federal Tax Lien Act (Lien Act) (26 U.S.C. § 6322 (1988)), IRS liens attach at the time an assessment for unpaid tax is made. *Jersey State Bank v. United States,* 926 F.2d 621, 622-23 (7th Cir. 1991). At that time a lien in the amount of the assessment arises on all "property *and rights to property,* whether real or personal, belonging to such person." (Emphasis added.) 26 U.S.C. § 6321 (1988). Even if Illinois law differs on the timing of the evaluation of the taxpayer's interest (see *Baker v. Salzenstein,* 314 Ill. 226, 233-34, 145 N.E. 355, 358 (1924)), state law cannot prevent attachment of liens created by federal statutes in favor of the United States. *United States v. Bess,* 357 U.S. 51, 56-57, 2 L. Ed. 2d 1135, 1141, 78 S. Ct. 1054, 1058 (1958).

██ Illinois law determines the nature of the interest the taxpayer has in the property. *Aquilino v. United States,* 363 U.S. 509, 512-13, 4 L. Ed. 2d 1365, 1368, 80 S. Ct. 1277, 1280 (1960); *Hoornstra v. United States,* 969 F.2d 530, 532 (7th Cir. 1992). In real estate installment contracts, Illinois follows the doctrine of equitable conversion. *Shay v. Penrose,* 25 Ill. 2d 447, 450, 185 N.E.2d 218, 220 (1962); *Miller v. Wines,* 197 Ill. App. 3d 447, 451, 554 N.E.2d 784, 787 (1990). Equitable conversion "takes place at the instant a valid and enforceable contract is entered into and *** the buyer at that time acquires an equitable title." *Shay,* 25 Ill. 2d at 450, 185 N.E.2d at 220. The owner "continues to hold the legal title, but in trust for the buyer; and the buyer becomes the equitable owner and holds the purchase money in trust for the seller." *Shay,* 25 Ill. 2d at 449, 185 N.E.2d at 219-20. At the time of the assessment in this case the Neeses had not yet defaulted on the contract. They thus held title via equitable conversion when the IRS lien attached.

This court has held the buyer under a real estate installment contract is the owner for real estate tax purposes. *Immanuel Evangelical Lutheran Church v. Department of Revenue,* 267 Ill. App. 3d 678, 682, 642 N.E.2d 1344, 1347 (1994). The contract here differs from the *Immanuel* contract in that here the contract states if the buyers default, amounts already paid shall be forfeited, whereas in *Immanuel* the buyer was contractually granted reimbursement for equity (*Immanuel,* 267 Ill. App. 3d at 682, 642 N.E.2d at 1347), but they are the same in that the buyer had the option at any time of prepaying the principal and receiving title and was required to

maintain insurance on the property, keep it in good repair and pay real estate taxes on it. *Christian Action Ministry v. Department of Local Government Affairs*, 74 Ill. 2d 51, 383 N.E.2d 958 (1978), relied upon in *Immanuel*, held a real estate contract purchaser an owner for tax purposes despite a contract provision that the sellers would retain legal and equitable title until the last payment was made. *Christian Action Ministry*, 74 Ill. 2d at 61, 383 N.E.2d at 963. It stated it could not " 'perceive any difference in kind between the conventional purchase money mortgage arrangement *** and the contract for warranty deed used here, which would justify disparate treatment for tax purposes.' " *Christian Action Ministry*, 74 Ill. 2d at 61, 383 N.E.2d at 963, quoting *Christian Action Ministry v. Department of Local Government Affairs*, 56 Ill. App. 3d 102, 105, 371 N.E.2d 1084, 1086 (1977).

■ At the time the tax lien was filed, the Neeses had equitable title to the property in question. There was thus an interest to which the IRS lien could attach. See *Cipriano v. Tocco*, 757 F. Supp. 1484, 1488-89 (E.D. Mich. 1991).

Nor did the Neeses' assignment of their interest to the bank somehow vitiate it. The assignment was nonabsolute, intended solely as security for the loan, and thus the Neeses retained an equitable interest in the property. See *Cipriano*, 757 F. Supp. at 1489. Also, the fact that the bank did not record the assignment makes it ineffective against the IRS.

### B. The IRS Had Priority Over the Bank

■ Federal law controls in determining the priority of IRS liens. *Aquilino*, 363 U.S. at 513-14, 4 L. Ed. 2d at 1368-69, 80 S. Ct. at 1280; *Hoornstra*, 969 F.2d at 532. The Lien Act is the applicable statute. As noted above, an IRS lien attaches at the time the assessment for unpaid tax is made. However, the lien will not be valid against an entity which achieves the status of "purchaser, holder of a security interest, mechanic's lienor, or judgment lien creditor" before the IRS files notice of its lien. 26 U.S.C. § 6323(a) (1988); see also *Jersey State Bank*, 926 F.2d at 623. The bank is neither a mechanic's lienor nor a judgment lien creditor, but claims it should have priority over the IRS as a purchaser or holder of a security interest.

■ "Purchaser" and "security interest" are both specifically defined in the Lien Act. See 26 U.S.C. §§ 6323(h)(6), (h)(1) (1988). The bank's interest must be perfected for it to fit into either category. See 26 U.S.C. § 6323(h)(6) (1988) (a purchaser's interest must be "valid under local law against subsequent purchasers without actual notice"); 26 U.S.C. § 6323(h)(1) (1988) (for an interest to be a security

interest it must have "become protected under local law against a subsequent judgment lien arising out of an unsecured obligation"); *Slodov v. United States*, 436 U.S. 238, 256-57, 56 L. Ed. 2d 251, 267, 98 S. Ct. 1778, 1790 (1978) ("the [Internal Revenue] Code specifically subordinates tax liens to the interests of certain others in the property, generally including those with a perfected security interest in the property"); *United States by & through Internal Revenue Service v. McDermott*, 507 U.S. 447, 454 n.8, 123 L. Ed. 2d 128, 137 n.8, 113 S. Ct. 1526, 1530-31 n.8 (1993) ("priorities here are determined, not by 'the law of judgment liens,' but by § 6323(a), as our case law has interpreted it. The requirement that competing state liens be perfected is part of that jurisprudence"). The bank's interest as assignee was not perfected and was properly subordinated to the IRS lien.

### 1. *Foreclosure Law*

■ First, since the bank chose to proceed under the Foreclosure Law, the Foreclosure Law's provisions apply exclusively to the proceeding. 735 ILCS 5/15—1106(b) (West 1992). Under section 15—1107(c) of the Foreclosure Law, the bank's interest is "deemed a mortgage." 735 ILCS 5/15—1107(c) (West 1992) (cross-referencing 735 ILCS 5/15—1106(b)(ii) (West 1992)). Under section 15—1301 of the Foreclosure Law, with certain exceptions inapplicable here, a mortgage is a lien only "from the time [it] is recorded." 735 ILCS 5/15—1301 (West 1992). Thus the bank did not even have a *lien* at the time the IRS filed notice, and so could not have had priority over the tax lien.

Section 15—1106(e) of the Foreclosure Law also provides "[g]eneral principles of law and equity, such as those relating to *** priority, *** supplement this Article unless displaced by a particular provision of it." 735 ILCS 5/15—1106(e) (West 1992). According to section 30 of the Conveyances Act:

> "All deeds, *mortgages* and other instruments of writing which are authorized to be recorded, *shall take effect and be in force from and after the time of filing the same for record,* and not before, *as to all creditors and subsequent purchasers, without notice;* and all such deeds and title papers shall be adjudged void as to all such creditors and subsequent purchasers, without notice, until the same shall be filed for record." (Emphasis added.) 765 ILCS 5/30 (West 1992).

As a mortgage, the bank's interest was void as to all creditors and subsequent purchasers without notice until it recorded in June 1992, so the IRS lien had priority under the Lien Act.

## 2. *Conveyances Act*

■ The same result obtains even if we ignore the fact that the bank's interest is treated as a mortgage because it proceeded under the Foreclosure Law. Section 30 of the Conveyances Act applies not only to mortgages but also to deeds and any *"other instruments of writing* which are *authorized* to be recorded." (Emphasis added.) 765 ILCS 5/30 (West 1992). The assignment was in writing. Thus even if the assignment is not treated as a mortgage, the IRS has priority if it was "authorized to be recorded" (765 ILCS 5/30 (West 1992)).

The bank first argues a contract for the sale of real estate need not be recorded to be valid, citing section 2 of the Dwelling Structure Contract Act (Contract Act) (765 ILCS 70/2 (West 1992)). It next observes that there is an explicit statutory mandate to record judgment liens (735 ILCS 5/12—101 (West 1992)) and contends there is no corresponding mandate for assignments. Therefore, it reasons, it did not have to record either in order to receive priority over the IRS. We disagree.

It is clear that, before the Contract Act was passed, contracts for deed were recordable and subject to the provisions of what is now section 30 of the Conveyances Act. *Herzer v. Dembosz,* 19 Ill. 2d 446, 448, 167 N.E.2d 210, 211 (1960), citing *Miller v. Akin,* 350 Ill. 186, 196, 182 N.E. 722, 726 (1932). The Contract Act did not change this rule, it reaffirmed it. Section 2 of the Contract Act simply states that contracts to which it applies "may be recorded or registered *** in the same manner as a deed or other document relating to the title of the real estate to be sold" and voids contractual provisions impeding recording. 765 ILCS 70/2 (West 1992). The fact that its language appears permissive is irrelevant, as section 30 of the Conveyances Act applies to all instruments "authorized to be recorded," not only those *required* to be recorded. 765 ILCS 5/30 (West 1992).

The bank argues since the contract need not be recorded to be effective we should not punish the bank for not having recorded it. It is true that unrecorded instruments are still effective and enforceable between the parties thereto. See *Schaumburg State Bank v. Bank of Wheaton,* 197 Ill. App. 3d 713, 720, 555 N.E.2d 48, 52 (1990), citing *Harms v. Sprague,* 105 Ill. 2d 215, 224-25, 473 N.E.2d 930, 934 (1984). But the same is true of a deed. As between the parties thereto, a validly executed deed is binding and irrevocable immediately upon "delivery" (*Chicago Land Clearance Comm'n v. Yablong,* 20 Ill. 2d 204, 206, 170 N.E.2d 145, 146 (1960)), and a deed need not be recorded to be delivered (*Williamson v. Williamson,* 306 Ill. 533, 540, 138 N.E. 166, 169 (1923)). But it *does* have to be recorded to be enforceable against the third parties listed in the Conveyances Act, and the same is clearly true of a contract for deed.

The bank's interpretation of the Contract Act would eviscerate the land records. The point of recording acts generally is to protect subsequent purchasers against unrecorded prior instruments, allowing reliance on the land records. 5 H. Tiffany, Real Property § 1262, at 14-15 (3d ed. 1939). *Bona fide* purchasers (BFPs), those who take title "in good faith for value," take "free of any interests of third persons, except such interests of which he has notice." *Daniels v. Anderson*, 162 Ill. 2d 47, 57, 642 N.E.2d 128, 133 (1994). If BFPs were not so protected, "our laws requiring the registration of deeds would be useless if not worse." *Petta v. Host*, 1 Ill. 2d 293, 304, 115 N.E.2d 881, 887 (1953). In Illinois, creditors receive the same protection as BFPs. See 765 ILCS 5/30 (West 1992); *Bauman v. Schoaff*, 331 Ill. App. 38, 43-44, 72 N.E.2d 571, 573 (1947) (and cases cited therein). If the Contract Act waived recording requirements for contracts for deed, there would be no way to rely upon the land records and neither BFPs nor creditors would be protected. This is not mandated by the Contract Act nor by any public policy of this state.

The Neeses' assignment to the bank was subject to section 30 of the Conveyances Act for the same reasons. If assignments were not "authorized to be recorded" for purposes of the Conveyances Act, they would be effective against creditors and BFPs even if unrecorded and, again, it would be impossible to rely upon the land records. We note section 28 of the Conveyances Act requires all "instruments relating to or affecting the title to real estate in this state" to be recorded (765 ILCS 5/28 (West 1992)); the bank has not advanced any reason this language does not include assignments. Also supporting our construction is the fact that a "conveyance" (we are, after all, interpreting section 30 of the "Conveyances Act") is, "[g]enerally, every instrument in writing by which an estate or interest in the realty is created," one example of which is an assignment. Black's Law Dictionary 333 (6th ed. 1990).

The bank argues that assignments need not be recorded because there is an explicit statutory requirement that judgment liens be recorded (see 735 ILCS 5/12—101 (West 1992)), and there is no counterpart to this statute relating to assignments. We find this reasoning unpersuasive. Judgment liens are entirely different from assignments. Judgment liens did not exist at common law; they are purely creatures of statute. *Haugens v. Holmes*, 314 Ill. App. 166, 169, 41 N.E.2d 109, 111 (1942). Assignments, on the other hand, are voluntary contractual arrangements and, as with contracts for deed, need not be recorded to be valid and enforceable as between the parties thereto. See *Schaumburg State Bank*, 197 Ill. App. 3d at 720, 555 N.E.2d at 52. The issue here, though, is enforceability against innocent *third* parties.

We hold both assignments of rights under contracts for deed and contracts for deed themselves are conveyances, and parties which receive interests through such instruments must record to be protected against third parties.

Briefly, the authority cited by the bank does not compel a different result. The definitions of "purchaser" and "security interest," which clarify that the interest competing with the IRS lien must be perfected, were not added to the Lien Act until 1966. See Federal Tax Lien Act of 1966, Pub. L. No. 89—719, 1966 U.S. C.C.A.N. (80 Stat.) 1125. Several of the cases the bank cites were decided under the pre-1966 version of the Lien Act and are unpersuasive because of the statutory amendment. See *General Telephone Co. v. American Casualty Co.*, 226 F. Supp. 929 (S.D. Ill. 1964); *J.C. Gauvey v. United States*, 291 F.2d 42 (8th Cir. 1961); *Greenup v. United States*, 239 F. Supp. 330 (D. Mont. 1965); *Sgro v. United States*, 609 F.2d 1259 (7th Cir. 1979) (relying on *United States v. City of New Britain*, 347 U.S. 81, 98 L. Ed. 520, 74 S. Ct. 367 (1954)). Most of the remaining cases dealt with entirely different issues. See *Hoornstra*, 969 F.2d 530; *Enochs v. Smith*, 359 F.2d 924 (5th Cir. 1966); *Avco Delta Corp. Canada Ltd. v. United States*, 459 F.2d 436 (7th Cir. 1972).

*Cipriano* is, on the other hand, very similar to this case. It held under Michigan law a buyer under a real estate installment contract had an interest to which an IRS lien could attach, despite the fact that all the buyer's interest had been assigned to another party as security for a loan. *Cipriano*, 757 F. Supp. at 1488-89. It went on to find the assignee had priority over the IRS because the assignee had recorded an "[a]ffidavit of [i]nterest," which under Michigan law was "authorized to be recorded" and thus protected it against a subsequent judgment lien. *Cipriano*, 757 F. Supp. at 1490-92. This gave it priority under the Lien Act. *Cipriano*, 757 F. Supp. at 1493. The court said the fact that the instrument was in fact accepted and recorded was "entitled to some presumptive—if not conclusive—weight supporting the Ciprianos' contention that the Affidavit of Interest was a 'recordable' document." *Cipriano*, 757 F. Supp. at 1492. Unfortunately for the bank in this case, the assignment was accepted and recorded, just as the document in *Cipriano*, but it was recorded *after* the IRS filed notice of its lien.

## III. CONCLUSION

The bank created its current predicament by failing to file the assignment when it was first made. It now requests this court to hold as a matter of law it has priority over all creditors and subsequent purchasers despite its failure to file. We decline to so hold.

As a final note, we wish to thank the trial court for its very clear and thorough "Judgment of Foreclosure" of March 28. A complete and detailed record of the trial court's findings and its reasons therefor makes our job in review much easier, and we appreciate the time and care which obviously went into the preparation of the judgment.

For the reasons above stated, we affirm the judgment of the circuit court of Pike County.

Affirmed.

STEIGMANN and McCULLOUGH, JJ., concur.