John CIPRIANO and Pasqualina Cipriano, Plaintiffs,

v.

Peter J. TOCCO, Anne M. Tocco, The United States Internal Revenue Service, and Frank Ioli, Defendants.

Civ. A. No. 89–CV–73517–DT.

United States District Court, E.D. Michigan, S.D.

Feb. 26, 1991.

Frederick A. Petz, Grosse Pointe Woods, Mich., for plaintiffs.

Vincent LoCicero, St. Clair Shores, Mich., for defendants Peter J. and Anne M. Tocco.

Elizabeth J. Larkin, Detroit, Mich., Mark D. Lansing, Washington, D.C., Frank Pollock, Bloomfield Hills, Mich., for defendant IRS.

## OPINION AND ORDER REGARDING PENDING MOTIONS

ROSEN, District Judge.

Presently before the Court are the following Motions: 1) the Plaintiffs' Motion for Summary Judgment Against the United States, Only; 2) the United States' Motion for Summary Judgment; 3) the Plaintiffs' Motion for Summary Judgment against Defendants Peter Tocco and Anne Tocco and Defendant Frank Ioli, Only; and 4) the United States' Motion to Dismiss Defendant Frank Ioli's Cross–Claim. These motions were brought before the Court for hearing on Tuesday, February 19, 1991, at which time the Court heard the arguments of counsel for each of the parties.

FACTS AND BACKGROUND:

Pursuant to the Court's Scheduling Order Dated September 26, 1990, the parties have filed a joint Stipulated Statement of Facts, with exhibits. The Court relies upon the Stipulated Statement of Facts in rendering this decision, but, for purposes if clarity and context, sets forth the following summary of the stipulated facts, which includes certain explanatory remarks concerning the procedural posture of the case:

### STIPULATED FACTS

The Plaintiffs commenced this action both: 1) to recover the $184,504.48 sum they allege is owing to them by Defendants Peter Tocco and Anne Tocco, husband and wife, under the terms of a promissory note; and 2) to determine the priority of their interest in certain real property located in Farmington Hills, Michigan with respect to the Toccos and the other Defendants in this case, each of whom claim, or once claimed, an interest in that property.

On September 1, 1982, Defendants Peter and Anne Tocco purchased Premier Produce Company from Plaintiffs for $300,-000.00 to be paid through monthly installments of $4,830.00 commencing August 1, 1983 and continuing thereafter for 90 consecutive months. The Toccos simultaneously executed a promissory note in the amount of $300,000.00. The note was secured by an increase in the amount due Plaintiffs from the Toccos under an existing land contract for the sale of the Grosse Pointe Shores residence purchased by the Toccos from the Plaintiffs.

In late 1983, the Toccos sold the Greenbriar residence in Grosse Pointe Shores and purchased another residence on East Jefferson in Grosse Pointe Park, Michigan. On December 7, 1983, in exchange for the Plaintiff's release of their land contract vendors' interest in the Greenbriar property, the Toccos executed a second mortgage to the Plaintiffs on the Grosse Pointe Park property in the amount of $300,000.00. This second mortgage was recorded with the Wayne County Michigan Register of Deeds on February 7, 1984.

On May 14, 1987, the Toccos sold the Grosse Pointe Park residence and entered into a land contract for the purchase of a residence in Farmington Hills, Michigan known as 25765 Surrey Court. This is the real property that is at issue in this case. Concurrently with the purchase of the Farmington Hills property by the Toccos, the Plaintiffs and the Toccos executed the following new documents:

A. *Agreement to Transfer Liens*, dated May 14, 1987, and executed by Plaintiffs and the Toccos. Pursuant to this agreement, the Toccos agreed, in part, to execute a second promissory note in the amount of $195,000.00 (representing the balance due on the original note) payable to Plaintiffs, to pay the Plaintiffs an additional $30,000.00 to be credited against any amounts owed on the original note, and to execute an Assignment of Purchaser's Interest in Land Contract. The Agreement to Transfer

Liens specifically provides that the Plaintiffs may record the Assignment of Purchaser's Interest in Land Contract only in the event that the Toccos default under the terms of the May 14, 1987 Promissory Note. The Assignment of Purchaser's Interest in Land Contract has *not* been recorded by Plaintiffs to date. Pursuant to the Agreement to Transfer Liens, Plaintiffs agreed, "in part," to release and discharge their mortgage on the Grosse Pointe Park property.

B. *Promissory Note,* in the amount of $195,000.00, dated May 14, 1987, naming Plaintiffs as the "Holder" and the Toccos as the "Maker." In February, 1988, the Toccos ceased making payments on the Promissory Note. On May 18, 1988, the Plaintiffs filed suit against the Toccos in the Oakland County (Michigan) Circuit Court seeking a declaration of the Toccos' breach of the contract and requesting the right to record the "purported"[1] Assignment of Purchaser's Interest in Land Contract, and to obtain possession of the premises. In September, 1989, Plaintiffs amended their Complaint in the Oakland County Circuit Court action, adding the United States and Frank Ioli as defendants. The United States was not served with the original Complaint, but it was served with the First Amended Complaint on November 6, 1989. The United States removed the Oakland County Circuit Court case to this Court on November 29, 1989 (where it is now pending as the instant action).

C. *Affidavit of Interest,* executed by the Plaintiffs only, reciting that on May 14, 1987, Plaintiffs entered into certain agreements including the Collateral Assignment of Purchaser's Interest in Land Contract. On June 12, 1987, Plaintiffs recorded the Affidavit of Interest with the Oakland County, Michigan, Register of Deeds. The Assignment of Purchaser's Interest in Land Contract was not attached to the Affidavit at the time the Affidavit was recorded with the Register of Deeds.

D. *Assignment of Purchaser's Interest in Land Contract,* dated May 14, 1987, executed by the Toccos, and "purporting"[2] to assign to the Plaintiffs the Toccos' interest, as land contract purchaser, in the Farmington Hills property. This Assignment of Purchaser's Interest in Land Contract has never been recorded.

On February 12, 1988, the Internal Revenue Service filed with the Oakland County Register of Deeds a Notice of Federal Tax Lien on the Farmington Hills property, in the amount of $9,025.33. On July 26, 1988, the Internal Revenue Service filed a second Notice of Federal Tax Lien in the amount of $17,306.50. These notices were filed because of unpaid tax liabilities of the Toccos individually and as general partners of Premier Produce Company (the entity originally purchased by the Toccos from the Plaintiffs back in 1982).

On October 21, 1988, without any notice to the Plaintiffs, the Internal Revenue Service conducted a tax lien sale of the Farmington Hills property. In its Notice of Public Auction Sale, and in its written Notice of Encumbrances and Minimum Bid Worksheet, the IRS listed the following encumbrances against the Farmington Hills property: (1) unpaid property taxes in the amount of $3,170 and (2) the land contract vendor's interest of the Bates (husband and wife) from whom the Toccos were purchasing the Farmington Hills property. Plaintiffs' Affidavit of Interest was not known to the IRS or Defendant Frank Ioli at the time of the sale. Both the IRS and Defendant Ioli believed that the interest of the Toccos that was sold at the auction sale was the Toccos' land contract vendees' interest in the Farmington Hills property and that the only encumbrances against such interest were the $3,170 unpaid property taxes and the interest of the land contract vendors.

The October, 1988 Notice of Public Auction Sale stated:

*Only the right, title, and interest of Peter J. and Anne Tocco in and to the property will be offered for sale. If requested the Internal Revenue Service*

---

1. The word "purported" is used by the parties in their Stipulated Statement of Facts.

2. Again, "purporting" is the word used in the parties' Stipulated Statement of Facts.

*will furnish information about possible encumbrances, which may be useful in determining the value of the interest being sold....* (emphasis added).

On the reverse side of the Notice of Public Auction Sale appears the following language:

The right, title, and interest of the taxpayer (named on the front of the form) in and to the property is offered for sale subject to any prior valid outstanding mortgages, encumbrances, or other liens in favor of third parties against the taxpayer that are superior to the lien of the United States. *All property is offered for sale "where is" and "as is" and without recourse against the United States. No Guaranty or warranty, express or implied, is made as to the validity of title, quality, quantity, weight, size, or condition of any of the property, or its fitness for any use or purpose.* (emphasis added).

The October, 1988 Notice of Encumbrance stated on the front side:

NOTE: *The Internal Revenue Service does not warrant the correctness or completeness of the above information,* and provides the information solely to help the prospective bidders determine the value of the interest being sold. *Bidders should, therefore, verify for themselves the validity, priority, and amount of encumbrances against the property offered for sale.* (emphasis added).

On the reverse side of this Notice of Encumbrance, the following is stated:

Pursuant to authority contained in sections 6331 and 6335 of the Internal Revenue Code and the regulations thereunder, and by virtue of a levy issued by authority of the District Director of Internal Revenue, the right, title, and interest [in the property described in the notice of sale] of the taxpayer [whose name appears on the reverse side of this document] will be sold.

Such interest is offered subject to any prior outstanding mortgages, encumbrances, or other liens in favor of third parties, which are valid against the taxpayer and are superior to the lien of the

United States. The reverse of this document provides information regarding possible encumbrances or interests which may be useful in determining the value of the interest being sold. All interests of record were mailed a notice of sale. The property will be sold "as is" and "where is" and without recourse against the United States. *The Government makes no guaranty or warranty, expressed or implied, as to the validity of the title, quality, quantity, weight, size, or condition of the property, or its fitness for any use or purpose. No claim will be considered for allowance or adjustment or for rescission of the sale based upon failure of the property to conform with any representation, express or implied.* (emphasis added).

Defendant Ioli was the high bidder at the IRS auction sale and paid the IRS $74,000 for the Toccos' interest in the Farmington Hills property. Ioli did not conduct a search of the records of the Oakland County Register of Deeds with respect to this property either before or after the auction sale. After the auction sale, but before the expiration of the Toccos' 180–day redemption period following the sale, the IRS discovered the Affidavit of Interest filed by the Ciprianos when the Ciprianos' attorney notified the IRS that they believed their interest to be superior to the IRS' tax liens. After the expiration of the redemption period, the IRS conveyed a quitclaim deed to Defendant Ioli without informing him of the existence of the Ciprianos' claimed interest to the property.

In May, 1988, prior to the tax sale, the Plaintiffs commenced this action in the Oakland County, Michigan Circuit Court, seeking a summary forfeiture of the Toccos' interest in the land contract, due to their failure to make the scheduled payments under the terms of the promissory note since their initial default in February, 1988, and further seeking their ejectment from the premises. The Toccos were the only Defendants named in these initial proceedings despite the fact that the IRS had, in 1988, filed record liens against the Toccos with the Oakland County Register of Deeds.

After the Plaintiffs realized that the Toccos' interest in the property had been sold by the IRS in October, 1988, they amended the Oakland County Circuit Court complaint to add both the IRS and Defendant Frank Ioli as parties to this action. The IRS then removed the action to this Court.

DISCUSSION:

The central issue in this case is whether the Ciprianos' interest under the Assignment of Vendee's Interest in Land Contract is superior to the IRS tax liens. The Court will therefore first address the priority issue and, second, discuss how the resolution of that issue relates to the pending motions.

A. Priority Between IRS Tax Liens and the Ciprianos' Interest as Assignees of the Vendees' Interest Under the Land Contract.

■ Pursuant to the Internal Revenue Code, the IRS' claim for unpaid taxes automatically becomes a lien on the property of the taxpayer, at the time the taxpayer refuses or neglects to pay the tax after demand, whether or not the IRS records such lien in the real property records:

§ 6321. Lien for taxes

If any person liable to pay any tax neglects or refuses to pay the same after demand, the amount (including any interest, additional amount, addition to tax, or assessable penalty, together with any costs that may accrue in addition thereto) shall be a lien in favor of the United States upon all property and *rights to property*, whether real or personal, belonging to such person.

26 U.S.C. § 6321 (emphasis added).

Although the IRS lien does not arise until the taxpayer refuses or neglects to pay the tax, once the taxpayer does refuse or neglect to pay the tax, the IRS lien relates back to the time the tax is assessed. 26 U.S.C. § 6322; *United States v. Phillips*, 715 F.Supp. 81, 83 (S.D.N.Y.1989).

1. *Did the Toccos have a "Right to Property" with respect to the Farmington Hills Residence at the time the IRS lien came into existence?*

The Court's initial inquiry is whether the Toccos had any "right to property" in the Farmington Hills residence to which the tax lien could attach:

Section 6321 provides that the lien shall be applicable to "all property and *rights to the property*, whether real or personal, *belonging* to such person." (Emphasis added). We have held that the extent of the tax debtor's interest in the property is determined by state law, and that the lien cannot attach when the debtor has *no* interest. *Aquilino v. United States*, 363 U.S. 509, 80 S.Ct. 1277, 4 L.Ed.2d 1365 (1960); *United States v. Durham Lumber Co.*, 363 U.S. 522, 80 S.Ct. 1282, 4 L.Ed.2d 1371 (1960).

*Slodov v. United States*, 436 U.S. 238, 98 S.Ct. 1778, 1790, n. 19, 56 L.Ed.2d 251 (1978) (emphasis added).

In *Aquilino*, the Supreme Court held that New York construction lien law was applicable to determine whether the taxpayer, a general contractor, had any interest in certain sums due from the owner of a construction contract to which the IRS' tax liens could attach. The taxpayer's subcontractors claimed these funds subject to a statutory trust in their favor. The Supreme Court remanded the case to the New York state Court of Appeals for a determination as to whether the taxpayer had any interest in the funds. *Aquilino*, 80 S.Ct., at 1281.

Similarly, in *Durham Lumber*, the Supreme Court held that, under North Carolina law, the taxpayer-general contractor's rights to payment from the owner of a construction project consisted solely of the right to receive the residue of payments after all the taxpayer's subcontractors are paid. *Durham Lumber*, 80 S.Ct., at 1284. Therefore, the IRS' tax lien did not attach to the portion of the funds owed by the owner to the taxpayer which were necessary to cover the claims of the taxpayer's subcontractors. *Id.*

In the instant case, however, it appears that the Toccos did have an interest in the Farmington Hills residence at the time the IRS lien attached. Although the assignment itself (Stipulation of Facts Exhibit E) purports to transfer all of the Toccos' interest in the land contract to the Ciprianos as of May 14, 1987, the parties intended the assignment to be an assignment for security only. *Krueger v. Campbell*, 264 Mich. 449, 462, 250 N.W. 285, 286 (1933); *General Electric Co. v. Levine*, 50 Mich.App. 733, 213 N.W.2d 811, 814 (1973).

This intent is well documented in the parties' Agreement to Transfer Liens:

3. *Execution of Collateral Assignment of Purchaser's Interest in Land Contract.* Debtor [Toccos] hereby agrees to execute the assignment of Purchaser's Interest in Land Contract in the form attached hereto as Exhibit "B." Further, Debtor agrees that in the event that Debtor should default under the terms and conditions of the Promissory Note executed by Debtor in conjunction with this matter or the Land Contract assigned as Collateral hereunder; then, in such event, Creditor [Ciprianos] may cause to be recorded for record and tendered to the Land Contract Vendor the above referenced assignment and Creditor may take whatever action is necessary to effectuate its interest in the premises described in said assignment and the possession of same.

(Stipulation of Facts Exhibit D, Par. 3, p. 2).

This language, construed as a whole, indicates that the assignment was not intended to be absolute but was intended for security purposes only. This language further indicates that the parties did not consider the assignment to be "effectuated" until the Toccos defaulted on the terms of the promissory note and the Ciprianos actually caused the assignment to be recorded in the land records. In other words, although the execution of the assignment on May 14, 1987 was effective at that time to grant the Ciprianos a security interest in the Toccos' interest in the land contract, it never was recorded and therefore never was effective to grant the Ciprianos an absolute transfer of the Toccos' interest in the land contract.

Under Michigan law, since the Toccos' assignment of their interest in the land contract was for security only, the Toccos retained their equitable interest in the underlying property. *Levine*, 213 N.W.2d at 814 (citing *Krueger*, 250 N.W. at 286). Thus, the Court concludes that the Toccos did have an interest in the Farmington Hills residence to which the IRS lien attached.

In reaching this conclusion, the Court rejects Defendant Ioli's argument that an internal memorandum written from the Detroit District Director of the Internal Revenue Service to Detroit District Counsel (Stipulation of Facts Exhibit Q) constitutes an "admission" that the Toccos had no saleable interest in the property. Although the memorandum presupposes that the mere existence of the assignment to the Ciprianos left the Toccos with no saleable interest, and consequently, the District Director believed that the tax sale should be nullified, the evident purpose of the memo was to seek the District Counsel's legal advice regarding these preliminary conclusions. The fact that the IRS did not seek to set aside the sale implies that the District Counsel did not agree with the District Director's legal analysis either that: a) the Toccos had no saleable interest, or b) their lack of a saleable interest constitutes grounds for setting aside the sale.

Moreover, the fact that the Toccos may have lacked any *equity* in the Farmington Hills property (i.e., the value of the Toccos' interest in the land contract was less than the amount of their debt to the Ciprianos) does not, in this Court's view, mandate the conclusion that there were no "property or rights to the property ... belonging to" the Toccos to which the IRS lien could attach. In *Aquilino*, the Supreme Court made clear that the preliminary question of whether the taxpayer/debtor has any property interest to which the IRS lien can attach is entirely separate from the issue of whether the IRS lien has priority over other competing liens. To conclude that the taxpayer has no interest in the subject property simply because the competing lien

exceeds the value of the taxpayer's interest in the property would in effect put the cart before the horse by presuming that the competing lien occupies a position of priority with respect to the federal tax lien, whereas the issue of priority is ultimately a question of federal statutory law, as set out more fully below. *See Aquilino*, 80 S.Ct., at 1280 n. 5.

### 2. *Priority between Ciprianos' interest and tax liens*

■ The Internal Revenue Code provides that tax liens shall occupy a position of priority with respect to all other interests in property, with certain limited exceptions:

§ 6323. Validity and priority against certain persons

(a) Purchases [sic], holders of security interests, mechanic's lienors, and judgment lien creditors.—The lien imposed by section 6321 shall not be valid as against any purchaser, holder of a security interest, mechanic's lienor, or judgment lien creditor until notice thereof which meets the requirements of subsection (f)[3] has been filed by the secretary.

26 U.S.C. § 6323(a).

Under this section, even an unrecorded IRS' tax lien takes priority over other claims to the subject property unless such other interests satisfy one of the enumerated exceptions listed in § 6323(a)—"purchaser, holder of a security interest, mechanic's lienor, or judgment lien creditor"—and defined in § 6323(h). *United States v. Phillips*, 715 F.Supp. 81, 83 (S.D.N.Y.1989). Thus, whether the Ciprianos' interest as assignees of the Toccos' interest in the land contract is superior to the IRS liens depends upon whether the Ciprianos' interest comes within one of these enumerated exceptions.

It is clear from the outset that the Ciprianos are neither mechanic's lienors, since their interest does not relate to "construction or improvement of such property," 26 U.S.C. § 6323(h)(2), nor judgment lienors, since they have not yet obtained a judgment against the Toccos. Thus, the Court

must determine whether the Ciprianos qualify as either "holders of a security interest" or "purchasers."

Section 6323(h) defines "security interest" as follows:

§ 6323. Validity and priority against certain persons

\* \* \* \* \* \*

(h) Definitions.—For purposes of this section and section 6324—

(1) Security interest.—The term "security interest means any interest in property acquired by contract for the purpose of securing payment or performance of an obligation or indemnification against loss or liability. A security interest exists at any time (A) if, at such time, the property is in existence and the interest has become protected under local law against a subsequent judgment lien arising out of an unsecured obligation, and (B) to the extent that, at such time, the holder has parted with money or money's worth.

26 U.S.C. § 6323(h)(1).

As noted, the Court has found that the assignment of the Toccos' interest under the land contract was intended, under the Agreement to Transfer Liens, to secure the Toccos' indebtedness to the Ciprianos. Thus, the requirement that the Ciprianos' interest be "any interest in property acquired by contract for the purpose of securing payment ..." has been met here. Therefore, the Court must go on to determine whether the Ciprianos' interest satisfies the requirements of § 6323(h)(1)(A) and (B).

a. Was the Ciprianos' interest protected under Michigan law against a subsequent judgment lien creditor at the time the IRS tax lien attached?

The rule in Michigan is that a conveyance of an interest in real property that is recorded takes priority over a subsequently recorded judgment lien. *Cheboygan County Construction Code Dept. v. First of America Bank*, 148 Mich.App. 56, 384

---

**3.** 26 U.S.C. § 6323(f)(1)(A) provides for the recording of tax liens with respect to the taxpayer's real property in accordance with the laws of the state in which the property is situated. The

parties do not dispute that the IRS liens at issue here were filed in accordance with the requirements of § 6323(f)(1)–(5).

N.W.2d 77 (1985). Thus, if this general rule were applied in the instant case, then it would appear that the Ciprianos' interest in the assignment was protected against a hypothetical judgment lien at the time the IRS filed its first notice of lien on February 12, 1988, since the Ciprianos had recorded their "Affidavit of Interest," disclosing the assignment of the Toccos' interest in the land contract to them, on June 12, 1987.

However, Defendant Ioli argues that the recording of the "Affidavit of Interest" was not sufficient to perfect the Ciprianos' interest in the land contract under Michigan law. Ioli argues that the Affidavit of Interest was not authorized to be recorded by the applicable Michigan statutes and, therefore, the Affidavit of Interest does not constitute effective notice to subsequent purchasers and lien creditors under Michigan law. *See Youngblood v. United States*, 141 F.2d 912, 913 (6th Cir.1944); *Galpin v. Abbott*, 6 Mich. 17, 45 (1858).

In support of this theory, Ioli points out that the Michigan recording statutes authorize the recording of various specific types of affidavits in the state registers of deeds, *see, e.g.*, M.C.L. §§ 565.451a, 565.202, 565.-381, and 565.221, but do not explicitly authorize the filing of an "Affidavit of Interest" disclosing the assignment of the vendee's interest in a land contract.

However, the Michigan Attorney General has opined that M.C.L. § 565.103[4] authorizes the recording of a "memorandum of land contract" which, while not constitut- ing the instrument whereby the interest in property is actually conveyed, is intended to provide evidence and notice to third persons that such an interest has been conveyed in a separate instrument:

A memorandum of land contract is an instrument executed for the purpose of reflecting the existence of a land contract and the vendee's interest in the real property subject to the underlying land contract.

In essence, a memorandum of land contract contains the names and addresses of the parties to the contract, the date of its execution, and the description of the property involved. It does not disclose the consideration involved, the terms of payment, the time of performance, nor the covenants of warranty. *Sometimes, it is in the form of an affidavit of the parties to the land contract. As such, it is not a land contract* requiring the requisite tax lien and 5-year tax certificate of the county treasurer as provided in MCL 211.135; MSA 7.194. *Its basic purpose is to serve as evidence of an executed land contract.*

1 OAG, 1955, No. 1944, p. 462 (September 8, 1955), reviewed the authority of a county register of deeds to record affidavits and concluded that the register of deeds has a duty to record only those instruments authorized by law to be recorded.

Land contracts executed in the presence of two witnesses and acknowledged

---

**4.** 565.103. Marketable record title; by whom held; successors in interest; notices of claim, filing for record.

    Sec. 3. Such marketable title [established pursuant to M.C.L. § 565.102] shall be held by such person and shall be taken by his successors in interest free and clear of any and all interests, claims, and charges whatsoever the existence of which depends in whole or in part upon any act, transaction, event or omission that occurred prior to such 40 year period, and all such interest, claims, and charges are hereby declared to be null and void and of no effect whatever at law or in equity: Provided, however, That any such interest, claim, or charge may be preserved and kept effective by filing for record during such 40 year period, *a notice in writing, duly verified by oath, setting forth the nature of the claims.* No disability or lack of knowledge of any kind on the part of anyone shall suspend the running of said 40 year period. For the purpose of recording notices of claim for homestead interests the date from which the 40 year period shall run shall be the date of recording of the instrument, non-joinder in which is the basis for such claim. Such notice may be filed for record by the claimant or by any other person acting on behalf of any claimant who is: (a) Under a disability, (b) Unable to assert a claim on his own behalf, (c) One of a class but whose identity cannot be established or is uncertain at the time of filing such notice of claim for record.

M.C.L. § 565.103 (emphasis added).

    In addition to this statute, M.C.L. § 565.105 requires the register of deeds of Michigan counties to accept for recording the "notices of claim" authorized by the quoted provision so long as such notice contains a legal description of the subject property and the name of the claimant.

before a notary public in accordance with MCL 565.351; MSA 26.671, are entitled to be recorded under MCL 565.354; MSA 26.674, in the office of the register of deeds in the county where the lands lie. *Research reveals no statute which expressly requires that a memorandum of land contract be recorded by a register of deeds.*

MCL 565.101; MSA 26.1271, provides that a qualified person who has an unbroken chain of title of record to any interest in land for 40 years shall at the end of that period be deemed to have marketable title to such interest in land subject, however, to such claims of interest in such lands which have been recorded during said 40–year period. *Any interest, claim, or charge against such land may be preserved and kept effective by filing for record with the register of deeds in the county where the lands lie during such 40–year period, of a notice in writing, duly verified under oath, setting forth the nature of the claim, interest, or charge.* MCL 565.-103; MSA 26.1273.

*A memorandum of land contract may be considered a claim against land under MCL 565.103; MSA 26.1273. Thus, the memorandum of land contract is entitled to be recorded by the register of deeds in the county where the land is located.*

It is my opinion, therefore, that a memorandum of land contract, which contains the names of the parties to the contract, the date thereof, and a description of the land involved, but which does not contain the terms of payment of the consideration, nor covenants of warranty, or the other mutual undertakings of the parties, if duly executed and acknowledged by the parties before a notary public, is entitled to be recorded by the register of deeds in the county where the land is located without a certification by the county treasurer that there are no tax liens on the property and that all property taxes have been paid for the five years next preceding the date of the instrument.

1985–1986 Op. Att'y Gen. 164, 165–166 (1985) (emphasis added).

Although not binding upon us, the Court finds that the reasoning of the Michigan Attorney General is persuasive and equally applicable to the "Affidavit of Interest" filed by the Ciprianos in the instant case. Although the Affidavit of Interest is not executed by the Toccos, as assignors, this is not required by the terms of M.C.L. 565.103. All that Section 565.103 does require is execution by the claimant, verified under oath, and the Affidavit of Interest meets these requirements.

The Court finds it instructive that the Affidavit of Interest at issue here was actually accepted by the Oakland County register of Deeds and recorded. This fact alone should certainly be entitled to some presumptive—if not conclusive—weight supporting the Ciprianos' contention that the Affidavit of Interest was a "recordable" document.

Finally, the Michigan legislature enacted the following slander of title provision at the same time it enacted § 565.103:

565.108. Filing slanderous notices of claims; awarding of costs to plaintiff

Sec. 8. No person shall use the privilege of filing notices hereunder for the purpose of slandering the title to land, and in any action brought for the purpose of quieting title to land, if the court shall find that any person has filed a claim for that reason only, he shall award the plaintiff all the costs of such action, including such attorney fees as the court may allow to the plaintiff, and in addition, shall decree that the defendant asserting such claim shall pay to plaintiff all damages that plaintiff may have sustained as the result of such notice of claim having been so filed for record.

M.C.L. § 565.108.

It is apparent from this provision that the Michigan legislature contemplated that § 565.103 would authorize claimants *unilaterally* to file notices of claim, and that § 565.103 was intended significantly to broaden the scope of recordable documents. Indeed, the language of § 565.103 itself permits the recording of a notice of *"any* interest, claims, and charges." The

Court therefore concludes that the Affidavit of Interest was recordable under M.C.L. § 565.103 and is therefore sufficient to provide constructive notice to subsequent purchasers and lien creditors of the nature and existence of the Ciprianos' claim.

Consequently, the Ciprianos' interest was protected, under Michigan, law against subsequent judgment lien creditors, as required by 26 U.S.C. § 6323(h)(1)(A).

b. Did the Ciprianos "Part with Money or Money's Worth?"

The "money or money's worth" requirement in 26 U.S.C. § 6323(h)(1)(B) is to be determined by federal law. *United States v. Phillips*, 715 F.Supp. 81, 84 (S.D.N.Y. 1989) (citing *Continental Oil Co. v. United States*, 326 F.Supp. 266, 270–271 (S.D.N.Y. 1971)). This requirement is not satisfied if the holder of the security interest received the security interest solely in exchange for an antecedent debt. *Id.* (citing *Manufacturers Hanover Overseas Capital Corp. v. Southwire Co.*, 589 F.Supp. 214, 219–220 (S.D.N.Y.1984); *United States v. Pavenick*, 197 F.Supp. 257, 259 (D.N.J.1961)).

In the instant case, however, the Ciprianos gave present value for the assignment of the Toccos' interest in the land contract. The Ciprianos agreed to release their recorded mortgage on the Toccos' Grosse Pointe Park residence in exchange for transferring that lien to the Farmington Hills residence. Thus, the Ciprianos surrendered something of equal value at the time they took the assignment of the Toccos' interest in the land contract on the Farmington Hills residence. The Court concludes that this exchange satisfies the "money or money's worth" requirement in § 6323(h)(1)(B). *See United States v. 3809 Crain Ltd. Partnership*, 884 F.2d 138, 142 (4th Cir.1989) (money or money's worth requirement in § 6323(h)(1)(B) means contemporaneous exchange of value reducible to money or money's worth).

In summary, the Court finds that the Ciprianos were the holders of a security interest, as defined in 26 U.S.C. § 6323(h)(1), at the time the IRS filed its first Notice of Lien in February, 1988.[5] For this reason, the security interest of the Ciprianos with respect to the Toccos' interest in the land contract is entitled to priority over the IRS liens pursuant to 26 U.S.C. § 6323(a).[6]

Having concluded that the Ciprianos' interest is superior to the IRS liens, the Court will address those consequences that flow from that determination with respect to the parties' claims in the instant action.

B. The Plaintiffs' Motion for Summary Judgment as to United States, only and United States' Motion for Summary Judgment.

The Ciprianos claim, in their Motion for Summary Judgment as to United States,

---

**5.** It is therefore unnecessary for the Court to determine whether the Ciprianos qualified as "purchasers" entitled to priority over the IRS liens under § 6323(a). However, in this respect the Court notes that the term "purchaser," as defined in § 6323(h)(6), specifically excludes those who otherwise qualify as the holder of a security interest. *See* 26 U.S.C. § 6323(h)(6).

**6.** Defendant Ioli further argues that the Ciprianos' lien was "inchoate" at the time the IRS notices of lien were filed and therefore cannot have attached to the property before the federal tax lien. *See Cavalier Service Corp. v. Wise*, 645 F.Supp. 31, 34 (E.D.Va.1986). However, this argument is inapplicable to the facts of the instant case. In *Wise*, and the cases cited therein, the courts dealt with the question of whether a prejudgment notice of *lis pendens* or a prejudgment garnishment could take priority over federal tax lien that was filed after the state court notice was filed but before final judgment was obtained by the would-be judgment lien creditor. The instant case is distinguishable in that the Ciprianos claim a security interest based upon a consensual assignment of the Toccos' interest in the land contract to secure their payment of the debt evidenced by the May 14, 1987 promissory note. Thus, the Ciprianos' interest is "choate" because identity of the lienor, the property subject to the lien and the amount of the lien are all established by the agreements between the Ciprianos and the Toccos. *Id.*

Defendant Ioli argues that the Ciprianos' interest was "contingent" and therefore, inchoate, under the express terms of the Agreement to Transfer Liens. However, as the Court reads the agreement, there is nothing contingent about the Ciprianos' security interest, except that the assignment of the Toccos' interest in the land contract would not become *absolute* until the Toccos defaulted under the terms of the promissory note. The Agreement was effective immediately to grant the Ciprianos a security agreement.

Only, that the IRS wrongfully levied upon and sold the Farmington Hills property, and they seek damages from the IRS resulting from the alleged wrongful levy. They argue that they should have received possession of the property back in May, 1989 through their summary ejectment proceedings against the Toccos commenced in the Oakland County, Michigan Circuit Court. They further argue that their failure to obtain possession was occasioned by the IRS' wrongful sale of the property to Defendant Ioli in October, 1989, and that this delay will net the Ciprianos significantly less (due to increased litigation costs) than if they had been permitted to sell the vendees' interest in the land contract in 1989.[7]

Alternatively, the Ciprianos claim that they are entitled to receive the proceeds received by the IRS from the tax sale to the extent that such proceeds exceed the amount of the recorded tax liens.

In response to the Plaintiffs' Motion for Summary Judgment, the IRS argues that the Ciprianos' claim for wrongful levy is not cognizable in this action because the Ciprianos did not state a wrongful levy claim in their complaint.

The Court agrees. Although the Amended Complaint names the IRS as a Defendant in this case, the principal relief sought by the Ciprianos against the IRS is a determination that the IRS has no present interest in the Farmington Hills property. The IRS readily concedes that, at present, it has no interest in the property since it disposed of its interest at the tax sale, resulting in the extinguishment of its tax liens. Nowhere in the Amended Complaint do the Ciprianos assert a claim for consequential damages as a result of the alleged wrongful levy or refer to the section of the Internal Revenue Code, 26 U.S.C. § 7426(a)(1), which would authorize a claim for wrongful levy. The Court agrees with the IRS that the Amended Complaint does not pro-

vide the IRS with sufficient notice that the Plaintiffs assert a claim for wrongful levy against the IRS. *See* FED.R.CIV.P. 8(a); *Baldwin County Welcome Center v. Brown*, 466 U.S. 147, 104 S.Ct. 1723, 1725, n. 3, 80 L.Ed.2d 196 (1984), *reh. den.*, 467 U.S. 1231, 104 S.Ct. 2691, 81 L.Ed.2d 885 (1984) ("Although the Federal Rules of Civil Procedure do not require a claimant to set forth an intricately detailed description of the asserted basis for relief, they do require that the pleadings give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests.").

■ More fundamentally, the IRS argues that the Complaint should be dismissed even to the extent that the Plaintiffs state a claim to quiet title with respect to the IRS because the Plaintiffs have failed to satisfy the pleading requirements of 28 U.S.C. § 2410. Section 2410 is a congressional waiver of sovereign immunity with respect to actions to quiet title:

> § 2410. Actions affecting property on which United States has lien
>
> (a) *Under the conditions prescribed in this section and section 1444 of this title for the protection of the United States*, the United States may be named as a party in any civil action or suit in any district court, or in any State court having jurisdiction of the subject matter—
>
> (1) to quiet title to,
>
> (2) to foreclose a mortgage or other lien upon,
>
> (3) to partition,
>
> (4) to condemn, or
>
> (5) of interpleader or in the nature of interpleader with respect to,
>
> real or personal property on which the United States has or claims a mortgage or other lien.
>
> (b) The complaint or pleading shall set forth with particularity the nature of the interest or lien of the United States. In

---

7. This argument is undermined by the fact that the first IRS lien was recorded *before* the Ciprianos commenced the state court action. If they had inspected the Oakland County Register of Deeds records before they commenced this action, they would have discovered the IRS lien. Indeed, it is surprising that the IRS was not

named as a party in this action until September, 1989, nearly 16 months after the action was commenced. Further, many of the problems associated with the October, 1988 tax sale (and much grief to others) might have been avoided had the Ciprianos simply inspected the real property records in May, 1988.

actions or suits involving liens arising under the internal revenue laws, the complaint or pleading shall include the name and address of the taxpayer whose liability created the lien and, if a notice of the tax lien was filed, the identity of the internal revenue office which filed the notice, and the date and place such notice of lien was filed....

28 U.S.C. §§ 2410(a)–(b).

It appears from the Amended Complaint that the Ciprianos have failed strictly to comply with the provisions of subsection (b) in that they have failed to identify: 1) the name of the taxpayer whose liability created the lien; 2) the name of the internal revenue office which filed the notice; and 3) the date and place the tax lien was filed. As indicated by the IRS in its Motion for Summary Judgment, the requirements of § 2410(b) are jurisdictional in the sense that the United States has not waived its sovereign immunity with respect to an action to quiet title unless and until the Plaintiffs have complied with the explicit conditions set forth in § 2410(b). *City Bank of Anchorage v. Eagleston*, 110 F.Supp. 429 (D.Alaska 1953).

However, in such case, the appropriate remedy is to grant the Plaintiffs leave to amend the Complaint. *Id.* The Plaintiffs might also take this opportunity to review their a claim for wrongful levy. The IRS argues that the statute of limitations for an action for wrongful levy had already passed at the time the Plaintiffs amended their complaint in the Oakland County Circuit Court action to name the IRS as a Defendant. *See* 26 U.S.C. § 6532(c)(1). As the Court has found that Amended Complaint, as it now stands, does not state a claim for wrongful levy, nothing herein should be interpreted to resolve the statute of limitations issue. But, the Plaintiffs should take care to conform their amended complaint to the requirements of FED.R. CIV.P. 11, keeping in mind the statute of limitations issue and whether their own failure to review the Oakland County Register of Deeds records in May, 1988 was the root cause of their alleged damages.

Moreover, even if the Court did have jurisdiction over the quiet title action against the IRS, the Plaintiffs would not be entitled to summary judgment that the IRS levy was wrongful. Neither the Stipulation of Facts nor the materials submitted by the Ciprianos in support of their Motion for Summary Judgment as to United States Only provide any facts from which the Court could surmise that "the costs of realizing collection from the security have or will be so substantially increased as to render the [Ciprianos'] security substantially valueless as a source of collection," as required by 26 C.F.R. § 301.7426–1(b). Accordingly, even setting the jurisdictional issues aside for the moment, the Court concludes that the Ciprianos are not entitled to summary judgment with respect to the wrongful levy claim.

C.  Plaintiffs' Motion for Summary Judgment against Defendants Toccos and Ioli, only.

1.  *As to Peter and Anne Tocco*

The Plaintiffs seek partial summary judgment against Defendants, Peter and Anne Tocco, both foreclosing any interest that they have in the Farmington Hills property and finding them liable, jointly and severally, under the terms of the May 14, 1987 promissory note, in an amount to be determined by the Court upon further proceedings. The Toccos responded to the Plaintiffs' Motion for Summary Judgment admitting the facts as stated by the Plaintiff and asking only that the Court grant summary judgment if the Court finds that summary judgment is appropriate. As there appears to be no dispute between the parties that the Toccos have no further interest in the Farmington Hills property, that they executed the May 14, 1987 promissory note, and that the promissory note reflects a *bona fide* indebtedness owed by the Tocco Defendants to the Plaintiffs, the Court will grant the Plaintiffs partial summary judgment, as requested.

2.  *As to Frank Ioli*

Defendant Ioli purchased at the tax sale only that interest which was held by the taxpayer, in this case, Peter and Anne Tocco. Since, as noted, the IRS' lien was subsequent and subordinate to the Cipria-

nos' security interest in the Toccos' interest in the land contract, the Ciprianos' security interest continued to attach to the Toccos' interest in the land contract after the tax sale. *Streule v. Gulf Finance Corp.*, 265 A.2d 298 (D.C.App.1970).

In their Motion for Summary Judgment, the Ciprianos request that the Court not only determine that their interest is superior to the interest of Defendant Ioli, but also that the Court award them immediate possession of the Farmington Hills property and foreclose Defendant Ioli from asserting any interest in the property.

However, the Ciprianos have not established that they are entitled to immediate possession under Michigan law. For one thing, it appears that Mr. Ioli, or the persons occupying the premises through him,[8] are entitled to notice of the claimed forfeiture and an opportunity to cure any default under the terms of the assignment before the Ciprianos are entitled to maintain summary proceedings for possession. *See* M.C.L. §§ 600.5726, 600.5728(1); *Gruskin v. Fisher*, 405 Mich. 51, 273 N.W.2d 893 (1979) (notice of forfeiture is precondition to summary proceedings for possession); *Mervez v. Petchesky*, 259 Mich. 507, 244 N.W. 144 (1932) (same). *See also Rothenberg v. Follman*, 19 Mich.App. 383, 172 N.W.2d 845, 848–850 (1969) (forfeiture for minor default in payment set aside and vendees were entitled to reinstitute the original terms of the land contract upon payment of damages to vendors caused by the delay).

Moreover, it is unclear whether the Ciprianos are entitled to foreclose their security interest through the forfeiture provisions of the Michigan statute:

> 600.5726. Forfeiture of executory contracts for the purchase of realty; recovery of possession of realty; accelerated indebtedness
>
> A person entitled to any premises may recover possession thereof by a proceeding under this chapter after forfeiture of an executory contract for the purchase of the premises *but only if the terms of the contract expressly provide for termination or forfeiture, or give the vendor the right to declare a forfeiture*, in consequence of the nonpayment of any moneys required to be paid under the contract or any other material breach of the contract. For purposes of this chapter, moneys required to be paid under the contract shall not include any accelerated indebtedness by reason of breach of the contract.

M.C.L. § 600.5726.

As noted, the terms of the assignment from the Toccos to the Ciprianos are revealed in Paragraph 3 of their Agreement to Transfer Liens. However, this provision is ambiguous as to whether the Ciprianos are entitled to forfeiture of the Toccos' interest in the land contract upon their default under the terms of the promissory note. Their agreement certainly does not "expressly provide for termination or forfeiture" or expressly give the Ciprianos the right to declare a forfeiture.

In any event, the parties' briefs have altogether failed to address the Ciprianos' rights vis-a-vis Ioli once it has been determined, as it has been here, that Defendant Ioli holds the Farmington Hills property subject to the superior security interest held by the Ciprianos. Accordingly, the Court finds that summary judgment as to the parties' rights to immediate possession is inappropriate at this time.

**D. IRS' Motion to dismiss Defendant Frank Ioli's cross–claim.**

In his Answer to the First Amended Complaint, Defendant Ioli filed a two-count cross-claim against the IRS. In the first count, Ioli argues that the IRS' failure to inform Defendant Ioli of the existence of the Ciprianos' superior security interest in the Farmington Hills property, before the expiration of the Toccos' redemption period and the time the IRS conveyed to Defendant Ioli a tax deed to the property, constitutes a breach of the IRS' state-law implied covenant of good faith and fair dealing,

---

**8.** The Stipulation of Facts indicates that Mr. Ioli's parents presently occupy the Farmington Hills residence.

since the IRS learned of the Ciprianos' interest after the October 21, 1988 tax sale but before the expiration of the redemption period.

In Count II, Defendant Ioli asserts that the same conduct on the part of the IRS, combined with its receipt of $74,000 from Defendant Ioli, constitutes unjust enrichment and conversion of Defendant Ioli's money.

Ioli asserts that the IRS has waived sovereign immunity with respect to both claims by virtue of the Federal Tort Claims Act, 28 U.S.C. § 2671, *et seq.* and 28 U.S.C. § 1346(b). However, the IRS argues, in its motion to dismiss Ioli's counterclaim, that neither the sovereign immunity waiver contained in the FTCA nor the provisions of 28 U.S.C. § 1346 are applicable to waive sovereign immunity with respect to Ioli's claims against the IRS here. Specifically, 28 U.S.C. § 2680(c) exempts from such waiver certain claims against the IRS:

§ 2680. Exceptions

The provisions of this chapter and section 1346(b) of this title shall not apply to—

\* \* \* \* \* \*

(c) Any claim arising in respect of the assessment or collection of any tax or customs duty, or the detention of any goods or merchandise by any officer of customs or excise or any other law-enforcement officer.

28 U.S.C. § 2680(c).

As interpreted by the Supreme Court, this provision excepts from the FTCA's general waiver of sovereign immunity any claims "arising out of" the assessment or collection of any tax, etc. *See Kosak v. United States*, 465 U.S. 848, 104 S.Ct. 1519, 1523, 79 L.Ed.2d 860 (1984). Accordingly, this exception to the sovereign immunity waiver has been interpreted to encompass a claim by the taxpayer, under 26 U.S.C. § 6337(b)(1), that the IRS wrongfully refused to allow him to exercise his right to redeem property following a tax sale. *Murray v. United States*, 686 F.2d 1320 (8th Cir.1982), *cert. den.*, 459 U.S. 1147, 103 S.Ct. 788, 74 L.Ed.2d 994 (1983). In so holding, the *Murray* court stated as follows:

The government relies first on Section 2680(c), which preserves sovereign immunity for "[a]ny claim arising in respect of the assessment or collection of any tax."

Appellant proposes a narrow construction of the exception, arguing that tax collection efforts were complete when the property was conveyed to the United States at the tax sale for the statutorily calculated minimum bid. He points out that he has not challenged as improper the IRS's assessment of taxes against the Fireside, Inc. He thus urges the conclusion that this lawsuit arises from rights which postdate the government's collection efforts. Allegedly, his legal action will not interfere with these efforts. Appellant also argues that the exception to FTCA jurisdiction stated in Section 2680(c) bars only taxpayer suits. The exception allegedly does not apply to suits by third parties whose interests may be affected by tax collection efforts.

The weight of authority is to the contrary.... In a case closely on point, *Pargament v. Fitzgerald*, 272 F.Supp. 553, 556 (S.D.N.Y.1967), *aff'd*, 391 F.2d 934 (2d Cir.1968), the court specifically noted that Section 2680(c) precluded suit by a chattel mortgagee who alleged that his rights had been impaired by tax collection proceedings against his mortgagor. The exception to FTCA jurisdiction clearly applies to taxpayers and third parties alike.

We also cannot agree that appellant's claim arises outside of "the assessment or collection of taxes" for purposes of the exception to FTCA jurisdiction. When at a tax sale property is adjudicated to the government at the statutory minimum price, see 26 U.S.C. § 6335(e)(1), the government in effect becomes the purchaser subject to the statutory right of redemption. 26 U.S.C. § 6337(b)(1). *Capital Savings Association v. Runnels*, 361 So.2d 458, 462 (La. Ct.App.1978). The right of redemption arises only in connection with the tax levy, and is an integral facet of such a levy. A claim founded on redemption rights is clearly a claim "arising in re-

spect of the collection of a tax" within the meaning of Section 2680(c).

*Id.,* at 1323–1324 (citations omitted).

■ The Court is persuaded that the *Murray* court's analysis is equally applicable here. Ioli does not claim that the IRS breached his right of redemption under 26 U.S.C. § 6337(b)(1), as was alleged by the plaintiff in *Murray*. However, he does essentially claim that the IRS breached its duty to provide him with a tax deed, as required by the very next section of the Internal Revenue Code, 26 U.S.C. § 6338(b), in that, in conveying the tax deed to him, the IRS breached its alleged state law duty to deal with him with good faith and fair dealing. The Court is persuaded that the IRS' duty to convey the tax deed is equally "integral" to the assessment or collection of a tax as was the alleged duty to allow redemption at issue in *Murray*. As such, Ioli's claims against the IRS come within § 2680(c)'s exception to the FTCA's waiver of sovereign immunity and are therefore barred.[9]

■ In any event, even if the Court were to proceed to the merits of Ioli's cross-claim against the IRS, the Court would conclude that the allegations in the cross-claim are insufficient to state a claim for relief. It is clear from the Stipulated Facts that Mr. Ioli brought ruin upon himself by failing to inspect the Oakland County Register of Deeds records before he bid and paid $74,000 for the Toccos' interest in the Farmington Hills property. This he failed to do despite the numerous explicit disclaimers and warnings contained in both the Notice of Public Auction Sale and Notice of Encumbrances to the effect that the interest sold will be subject to prior liens and that the bidders should satisfy themselves as to the title and value of the interest sold. Not only did Mr. Ioli ignore these warnings prior to the sale, he also neglected to inspect the Register of Deeds records at any time before the expiration of the 180–day redemption period subsequent to the sale. Because the IRS did convey to Mr. Ioli a deed that comports with the requirements of 26 U.S.C. § 6338(b), the Court will not

set aside the sale based solely upon the IRS' failure to notify Mr. Ioli of the existence of superior liens before the expiration of the 180–day redemption period. To paraphrase, equity helps only those who help themselves.

For the foregoing reasons, the Court will grant the IRS' motion to dismiss Defendant Ioli's cross claims.

ORDER:

For all of the reasons set forth above, and the Court being otherwise fully advised in the premises;

NOW THEREFORE;

IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that the Plaintiffs' Motion for Summary Judgment Against the United States, Only is GRANTED only to the extent that the Court hereby finds that the United States presently holds no interest in the Farmington Hills property and otherwise DENIED in all other respects.

IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that the United States' Motion for Summary Judgment is GRANTED, but Plaintiffs are hereby granted leave to amend their complaint to state a claim pursuant to 28 U.S.C. § 2410 and 26 U.S.C. § 7426, and any judgment rendered herein in favor of the United States is without prejudice to the Plaintiffs' rights to amend their Complaint.

IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that the Plaintiffs' Motion for Summary Judgment against Defendants Peter Tocco and Anne Tocco is GRANTED to the extent that the Court finds that the Toccos presently hold no interest in the Farmington Hills property and also to the extent that the Court finds that Peter Tocco and Anne Tocco are liable, jointly and severally, to the Plaintiffs for the unpaid balance of principal and interest owing to the Plaintiffs under the terms of the May 14, 1987 promissory note, in an amount to be determined by a further order of the Court.

---

**9.** *But see Burgos Fuentes v. United States,* 14 Cl.Ct. 157, 88–1 U.S.Tax Cas. para. 9204 (1987) (proceeds to the merits of and rejects claims very similar to those brought by Defendant Ioli in the instant case).

IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that the Plaintiffs' Motion for Summary Judgment Against Defendant Frank Ioli is GRANTED to the extent that the Court finds that Frank Ioli's interest in the Farmington Hills property is subject and subordinate, in all respects, to the Plaintiffs' security interest in the Farmington Hills property created by the May 14, 1987 Agreement to Transfer Liens and the Assignment of Vendee's Interest in Land Contract. The Plaintiffs' Motion for Summary Judgment Against Defendant Frank Ioli is DENIED in all other respects.

IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that the United States' Motion to Dismiss Defendant Frank Ioli's Cross–Claim is GRANTED.