77 F.3d 483
 77 A.F.T.R.2d 96-1353
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
ROBERT MICKAM TRUST, Plaintiff-Appellee,
v.
UNITED STATES of America, Defendant-Appellant.
 No. 94-2189.
 United States Court of Appeals, Sixth Circuit.
 Feb. 20, 1996.
 
 Before: ENGEL, MILBURN, and WEBER, Circuit Judges.
 PER CURIAM.
 
 
 1
 Pursuant to 28 U.S.C. § 1291, the United States appeals the judgment of the district court discharging a federal tax lien on a parcel of residential property. For the reasons that follow, we vacate and remand.
 
 I.
 A.
 
 2
 On August 8, 1988, the Internal Revenue Service ("IRS") made an assessment against Ronald Chandler and his wife Margaret for a deficiency in their 1987 federal income tax liabilities in the amount of $67,445.45 plus statutory additions. At that time, the Chandlers owned the house located at 36845 Turtle Creek Court ("the Property") in Farmington Hills, Michigan. Pursuant to a divorce decree, Margaret Chandler quitclaimed her interest in the Property to Ronald Chandler on February 3, 1989.
 
 
 3
 On February 6, 1989, Ronald Chandler executed a warranty deed to the Property to the Robert Mickam Trust ("the Trust") in exchange for $300,000. An escrow agreement was also entered into between Chandler and the Trust on that day. The deed was placed into escrow pursuant to the escrow agreement which provided that Chandler intended to sell the Property to the Trust subject to his option to repurchase the Property. To exercise this option, Chandler was required to pay the Trust $18,000 within six months and $318,000 within one year. If Chandler did not exercise the option, then the Trust would take possession of the Property.
 
 
 4
 At that time, the Trust did not record the warranty deed with the Oakland County Register of Deeds. Rather, the Trust filed on February 15, 1989, an "Affidavit Certifying to Interest in Real Property" ("Affidavit"). The Affidavit stated that the Trust as the seller was entitling Chandler as the buyer "to receive title and conveyance" of the Property upon "fulfillment of certain conditions as enumerated in an escrow agreement...." J.A. 59. The Trust decided to record the Affidavit rather than the deed in order to save money by not having to purchase recording stamps twice in the event that Chandler exercised his repurchase option.
 
 
 5
 Chandler did not exercise his option by making the first payment of $18,000, and, on October 13, 1989, the deed to the Property was released to the Trust in accordance with the escrow agreement and Chandler's release. The Trust then recorded the deed on that date.
 
 
 6
 The Trust did not know of the federal tax assessment against the Chandlers at the time it entered into the escrow agreement with Ronald Chandler because no federal tax lien had been filed by that time against the property. The IRS did not file the tax lien on the Property until March 16, 1989. Thus, the lien was filed after the Trust had filed its Affidavit but before the Trust had recorded its deed.
 
 B.
 
 7
 On July 23, 1992, the Trust brought this action against the United States pursuant to 28 U.S.C. § 2410 to quiet title to the Property. Motions for summary judgment were filed by both parties, and both were denied by the district court. At the conclusion of the bench trial, the district court ruled in favor of the Trust and ordered that the federal tax lien on the property be discharged. The district court found that the transaction between the Trust and Chandler was a sale of property with an option to repurchase and that title passed to the Trust at the closing on February 6, 1989. The district court held that "[b]ecause an absolute sale of the property occurred, and because the Mickam Trust was a bona fide purchaser for value, without notice, Chandler had no interest in the Turtle Creek property beyond February 6, 1989, to which the government lien could attach." J.A. 47. The district court entered judgment for the Trust on August 18, 1994, and this timely appeal followed.
 
 II.
 
 8
 The United States argues that the district court erred in discharging the federal tax lien from the Property. Since the district court's decision to discharge the tax lien is a question of law, we will apply de novo review. United States v. Braggs, 23 F.3d 1047, 1049 (6th Cir.), cert. denied, 115 S.Ct. 262, and 274, and 329 (1994).
 
 
 9
 The district court's decision to discharge the federal tax lien was based on the rationale that the lien did not attach to the Property until it was filed on March 16, 1989, and since the Property had been sold to the Trust before that filing, the lien could not attach to property no longer belonging to Chandler. However, § 6322 of the Internal Revenue Code ("IRC") provides that a federal tax lien "shall arise at the time the assessment is made" unless provided otherwise by law. 26 U.S.C. § 6322. Further, § 6321 provides that a federal tax lien attaches to all property and rights to property of a delinquent taxpayer. 26 U.S.C. § 6321. Since the federal income tax deficiency was assessed against the Chandlers prior to the sale of the Property to the Trust, the lien was attached to the Property when the Trust purchased it. Thus, the Trust holds the Property subject to the lien unless it can claim an exception under § 6323. See United States v. Bess, 357 U.S. 51, 57 (1958). United States v. Bank of Celina, 721 F.2d 163, 167 (6th Cir.1983). Because there is no dispute that Chandler owned the Property at the time the taxes were assessed against him, the rationale behind the holding of the district court was incorrect.
 
 
 10
 The United States argues that it is entitled to a lien on the Property because the Trust is not a "purchaser" as defined by § 6323(h)(6) of the IRC. The district court did not address this argument.[1] The significance of whether the Trust is a purchaser under the statute is due to § 6323(a) which states that a federal income tax lien "shall not be valid as against any purchaser ... until notice thereof which meets the requirements of subsection (f) has been filed by the Secretary." 26 U.S.C. § 6323(a). The United States, acting through the IRS, did not comply with the statute's filing requirements until after the sale of the Property to the Trust had taken place. Therefore, if the Trust was a "purchaser" as defined by the IRC when Chandler sold the land to the Trust, then the lien is invalid against the Property and should be discharged.
 
 
 11
 Under § 6323(h)(6) of the IRC, "purchaser" is defined as "a person who, for adequate and full consideration in money or money's worth, acquires an interest (other than a lien or security interest) in property which is valid under local law against subsequent purchasers without actual notice." 26 U.S.C. § 6323(h)(6). In analyzing whether the interest is valid against subsequent purchasers, we must evaluate the issue from the perspective of "all hypothetical subsequent purchasers." United States v. V & E Engineering & Constr. Co., 819 F.2d 331, 335 (1st Cir.1987). As required by the statute, Michigan law will be applied to determine whether the Trust is a purchaser under § 6323(h)(6).
 
 
 12
 The United States argues that the Trust is not a purchaser because it did not record its deed to the Property until after the tax lien was recorded, and the mere filing of the Affidavit was not valid against subsequent purchasers without actual notice. In response, the Trust argues that the Affidavit was constructive notice of the sale of the Property and, thus, was valid against subsequent purchasers without actual notice.
 
 
 13
 For the affidavit to afford constructive notice to subsequent purchasers, it must be properly recordable under Michigan law. Michigan law provides that
 
 
 14
 [e]very conveyance of real estate within the state hereafter made, which shall not be recorded as provided in this chapter, shall be void as against any subsequent purchaser in good faith and for a valuable consideration, of the same real estate or any portion thereof, whose conveyance shall be first duly recorded.
 
 
 15
 M.C.L.A. § 565.29. "Conveyance" is defined by Michigan law to "embrace every instrument in writing ... by which the title to any real estate may be affected in law or equity...." M.C.L.A. § 565.35. Furthermore, Michigan law provides for the recording of certain affidavits relating to real property, including an affidavit as to "knowledge of the happening of any condition or event which may terminate an estate or interest in real property." M.C.L.A. § 565.451(a)(b).
 
 
 16
 In the present case, the Affidavit states that Chandler has an option to receive the title to the Property if he meets certain conditions enumerated in the escrow agreement. In Cipriano v. Tocco, 757 F.Supp. 1484 (E.D.Mich.1991), a case also involving the priority of a federal tax lien, a similar affidavit of interest was held to impart constructive notice to subsequent purchasers of the interest referred to within the affidavit. Therefore, in accord with Michigan statutory law and Cipriano, the Affidavit in this case was properly recordable.
 
 
 17
 However, in order for the Affidavit to impart constructive notice to a subsequent purchaser, it must have been recorded within the chain of title to the Property. In other words, it must have been recorded under Chandler's name as the grantor. If it was recorded under Chandler as the grantee, no subsequent purchaser would be charged with notice of the Affidavit because there would be no reason to check the conveyances made to Chandler; a subsequent purchaser would only be interested in the conveyances made by Chandler. The record below does not indicate how the Affidavit was recorded. Therefore, it is necessary to remand this case for that determination.
 
 
 18
 If, upon remand, the district court determines that the Affidavit was properly recorded within the chain of title to the Property so as to give a subsequent purchaser constructive notice of the Affidavit, it must then be determined whether the Affidavit imparted inquiry notice of the sale of the Property to the Trust. While it is true that the Affidavit does refer to the Trust as the "seller" and Chandler as the "purchaser," it does not refer to the actual sale of the Property to the Trust and cannot impart constructive notice of the actual conveyance of the Property to the Trust since that conveyance is not referenced. As required by M.C.L.A. § 565.29, the conveyances of real property must be recorded to prevail against subsequent purchasers, and Chandler's conveyance to the Trust was not recorded. Thus, it must be determined whether a subsequent purchaser would have been placed on inquiry notice of the sale of the Property. A determination of inquiry notice is a question of fact, Cooter & Gell v. Hartmarx Corp., 496 U.S. 384, 401-02 (1990), and, thus, a finding that should be made by the district court. Icicle Seafoods, Inc. v. Worthington, 475 U.S. 709, 714 (1986).
 
 
 19
 Should the district court determine that a subsequent purchaser would be charged with inquiry notice of the sale of the Property, then the next step of analysis is whether inquiry notice constitutes actual notice under the language of § 6323(h)(6). The United States argues that inquiry notice is really actual notice and, thus, mandates that the federal lien have priority because the Trust can only prevail under the federal statute if its interest is valid against subsequent purchasers without actual notice. On the other hand, the Trust argues that since Michigan law requires good faith for subsequent purchasers to prevail, inquiry notice would defeat the good faith of a subsequent purchaser and mandate that the lien be discharged. While the Trust's view of Michigan law is correct[2], the inclusion of the phrase "without actual notice" in the federal statute precludes that argument, for to allow a party who has imparted actual notice but not constructive notice of their interest in land to prevail against a federal lien would be to thwart the very language of the federal statute. Accordingly, the district court must determine whether inquiry notice is a type of actual notice or a type of constructive notice.
 
 
 20
 Under the Treasury Regulations interpreting 26 U.S.C. § 6323(h)(6), whether an interest is valid against "subsequent purchasers without actual notice," is framed wholly as a question of local law. See 26 C.F.R. § 301.6323(h)-1(f)(4). Thus, whether inquiry notice is a type of actual notice is a question of Michigan law. See also, Metro. Nat'l Bank v. United States, 901 F.2d 1297, 1303-04 (5th Cir.1990) (applying Mississippi law's definition of inquiry notice when interpreting 26 U.S.C. § 6323(h)(1)). Unfortunately, Michigan law is not clear on this subject because under Michigan law it does not matter what type of notice a subsequent purchaser has. References to inquiry notice under Michigan law categorize inquiry notice as both a type of actual notice and a type of constructive notice.
 
 
 21
 Should the district court determine that inquiry notice is a type of constructive notice, then the lien should be discharged. Should the district court determine that inquiry notice is a type of actual notice, and, thus, that the federal lien should not be discharged, the argument of the Trust concerning equitable subrogation would have to be addressed. In detailing the analysis facing the district court on remand, we do not mean to imply or suggest the ultimate resolution of this case. Furthermore, we agree with the district court's finding that an absolute sale of the Property occurred.
 
 III.
 
 22
 For the reasons stated, the judgment of the district court is VACATED and this case is REMANDED for proceedings consistent with this opinion.
 
 
 
 [1]
 While the district court did refer to the "purchaser" exemption of § 6323 of the IRC, it did not apply the analysis required by the definition of "purchaser" of whether the Trust's interest was valid under local law against subsequent purchasers without actual notice. Instead, the district court erroneously based its decision on the fact that a sale occurred, and the lien could not attach to property sold to a bona fide purchaser for value when the lien had not yet been filed
 
 
 [2]
 See Michigan Nat'l Bank & Trust Co. v. Morren, 487 N.W.2d 784, 786 (Mich.Ct.App.1992) (per curiam), appeal dismissed, 506 N.W.2d 869 (Mich.1993)